**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John H. CANDIE, Defendant–Appellant.**

**No. 91–2576.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1992.

Decided Aug. 26, 1992.

Michael Baker, Springfield, Mo., argued, for defendant-appellant.

Richard Monroe, Springfield, Mo., argued, for plaintiff-appellee.

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

LOKEN, Circuit Judge.

John H. Candie appeals the 235–month sentence imposed by the district court after he was convicted of one conspiracy count and five substantive counts of possessing cocaine and crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. Candie argues that the unreliable trial testimony of his confederate, Tommie Joe Johnson, was improperly used to establish Candie's base offense level for purposes of sentencing under the Guidelines. Without reaching that issue, we remand for resentencing.

I.

At Candie's trial, Johnson testified that he began leading a cocaine distribution ring in Springfield, Missouri, in 1986. Johnson hired Candie as a salesman in January 1989; Candie served as Johnson's "50/50" partner from April 1989 until they were arrested in June 1990. Candie and Johnson both made trips to buy cocaine in Chicago, Kansas City, and Houston. In the summer of 1989, Candie persuaded Johnson to convert some of their cocaine to crack (cocaine base) to meet their local competition; Candie then handled the crack sales.

As to quantities, Johnson testified that between April 1989 and June 1990, the conspirators purchased ten to twelve kilo-

grams of cocaine in Chicago, 82 ounces in Kansas City, and three kilograms in Houston. He estimated that Candie sold twenty to thirty grams of crack per day for two to three months in the summer of 1989, producing revenues of $1,000 to $4,000 per day. Two other trial witnesses testified to small crack purchases from Candie during this period, an undercover Springfield police officer and a drug user who had pleaded guilty to "passing bad checks" to support her cocaine use. In addition to Johnson's testimony as to the nature and scope of the conspiracy, other government witnesses established most of the small transactions alleged in the substantive counts of the indictment.

Johnson was aggressively cross-examined at trial. He admitted that he had pleaded guilty to conspiracy and substantive counts and had agreed to cooperate with the government in exchange for a maximum fifteen-year sentence. He admitted to a prior criminal record. His testimony that Candie had bought a gun for use in their cocaine business was impeached by prior inconsistent grand jury testimony. However, except for challenging Johnson's testimony that he and Candie had grossed approximately $600,000 selling cocaine, the defense did not attack Johnson's testimony as to drug quantities, no doubt because Candie's trial strategy was to deny all of the charges. The jury acquitted Candie of the gun charge and one substantive drug count, but convicted him of the conspiracy and five substantive drug counts.

In the Presentence Report (PSR), the Probation Officer calculated a base offense level of 36, based upon testimony by Johnson that Candie sold an average of 25 grams of crack cocaine for 54 days, or 1,350 grams, which is the sentencing equivalent of 135 kilograms of cocaine.[1] The Probation Officer then recommended increasing Candie's offense by two levels for the use of a dangerous weapon, by three levels for being a manager or supervisor in a criminal activity involving five or more people, and by two levels for obstruction of justice, for a total offense level of 43 and a recommended sentence of life imprisonment.

Candie filed objections to the PSR in which he denied engaging "in the quantities of sales that are alleged," and complained that the PSR's quantity computation "is not based on reliable evidence, but based upon speculation and conjecture and solely upon the testimony of Tommie Joe Johnson." After meeting with counsel, the Probation Officer attached an Addendum to his PSR stating, with respect to this objection, that a sentencing hearing would be required and that "the Court is in a unique position to evaluate the reliability of the trial evidence."

At the sentencing hearing, neither side presented any additional evidence. The government conceded that Johnson had provided the only evidence as to quantity but argued that his trial testimony adequately supported the recommended base offense level of 36. At one point, the district judge commented:

> THE COURT: [T]he only evidence I have concerning the volume of cocaine is that of Tommie Joe Johnson. And I assume I have no alternative but to accept that evidence because, otherwise, if I assess some other amount, it would be completely arbitrary and capricious without any evidence to support it whatsoever.

After hearing additional argument, the court stated, "I will find that there was in excess of 50 kilograms of cocaine, that is crack cocaine multiplied by 100 to equal more than 50 kilograms of cocaine, which would carry an offense level of 36." The court rejected the recommended weapon and obstruction of justice adjustments and reduced the upward adjustment for role in the offense to two levels, resulting in a total offense level of 38. The court then sentenced Candie to the bottom of his

---

**1.** Consistent with 21 U.S.C. § 841(b)(1)(B), the Guidelines' Drug Equivalency Tables provide that one gram of crack cocaine is equivalent to 100 grams of cocaine powder for purposes of determining base offense levels. *See* U.S.S.G. § 2D1.1 comment. (n. 10). The Guidelines prescribe a base offense level of 36 when the offense involves at least 50 kilograms but less than 150 kilograms of cocaine equivalent. *See* U.S.S.G. § 2D1.1(c)(4).

Guidelines range of 235–293 months, describing this minimum Guidelines sentence as "radically excessive."

## II.

■ Under the Guidelines, Candie's base offense level is based upon all acts "that occurred during the commission of the offense of conviction," here, the conspiracy. U.S.S.G. § 1B1.3(a)(1). The base offense level for drug offenses is determined by the quantity of illegal drugs attributable to the defendant. *See* U.S.S.G. § 2D1.1(c). Quantity is an issue for the sentencing judge; the government must prove quantity at sentencing by a preponderance of the evidence. *See United States v. Gooden,* 892 F.2d 725, 727–28 (8th Cir.1989), *cert. denied sub nom. Keener v. United States,* 496 U.S. 908, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990).

Rule 32 of the Federal Rules of Criminal Procedure prescribes many of the procedures that attend the sentencing process. With few exceptions, Rule 32 requires that a probation officer prepare a PSR that contains, among other things, "the classification of the offense and of the defendant under the categories established by the Sentencing Commission ... that the probation officer believes to be applicable to the defendant's case." Rule 32(c)(2)(B). The defendant must be afforded an opportunity to review and comment on the PSR and, in the court's discretion, "to introduce testimony or other information relating to any alleged factual inaccuracy contained in it." Rule 32(c)(3)(A). When the defendant challenges the factual accuracy of information contained in the PSR:

> the court shall, as to each matter controverted, make (i) a finding as to the allegation or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into ac-

count at sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

Rule 32(c)(3)(D). The Guidelines expressly provide that, in resolving such disputes, the court may consider any relevant information that "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3.

## III.

■ Candie argues that the district court's determination of the quantity of cocaine attributable to him for sentencing purposes was based entirely upon testimony of Johnson that lacked "sufficient indicia of reliability." [2] Johnson's trial testimony was the only evidence of quantity in the record, and this testimony was direct support for the quantities attributed to Candie in the PSR. Johnson testified live under oath and was vigorously cross-examined; thus, there are no hearsay or confrontation issues here. Johnson as ringleader was in the best position to quantify the conspiracy's activities. The jury obviously credited a great deal of Johnson's testimony. Thus, this is not one of those extremely rare cases in which an appellate court can say that evidence was not sufficiently reliable as a matter of law. *See United States v. Simmons,* 964 F.2d 763, 776 (8th Cir. 1992).

Viewed in this light, Candie's attack on the reliability of Johnson's testimony boils down to an attack on the credibility of that testimony. And, as the government vigorously argues, witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal. *See* 18 U.S.C. § 3742(e); *United States v. Pou,* 953 F.2d

---

**2.** Candie also argues that the government abused the Sentencing Guidelines and violated his rights to due process and equal protection by charging him with a series of small sales and then basing his sentence on much larger drug quantities. This argument is without merit. Candie was charged with participation in a conspiracy, and the quantities used to determine his sentence were based upon Johnson's trial testi-

mony as to the scope of that conspiracy. The Guidelines mandate this "real offense" approach to the sentencing of conspirators, and it does not violate the Constitution. *See* U.S.S.G. § 2D1.4(a) comment. (n. 1); *United States v. Payne,* 940 F.2d 286, 293 (8th Cir.), *cert. denied sub nom. Bogan v. United States,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

363, 370 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992).

█ The problem in this case is that the record does not clearly reflect how the district court resolved Candie's quantity objection to the PSR. The Guidelines provide that the sentencing judge should estimate quantities "[w]hen there is no drug seizure or the amount seized does not reflect the scale of the offense." U.S.S.G. § 2D1.4, comment. (n. 2). Although we have held that drug quantities may not be arbitrarily extrapolated, *see United States v. Lawrence,* 915 F.2d 402, 408–09 (8th Cir.1990), we have also upheld quantity estimates that were reasonably supported by the evidence reviewed under the clearly erroneous standard. *See United States v. Olderbak,* 961 F.2d 756, 764 (8th Cir.1992). *See also United States v. Marrero,* 904 F.2d 251, 262 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 561, 112 L.Ed.2d 567 (1990). When the defendant has objected to the quantity attributed to him in the PSR, we think that Rule 32(c)(3)(D) requires the district court to make findings that explain how it has resolved this controverted issue.

█ At the sentencing hearing in this case, the district court announced its ultimate finding before imposing sentence— "there was in excess of 50 kilograms of cocaine ... which would carry an offense level of 36." This ultimate finding followed its comment, "I assume I have no alternative but to accept that evidence," because any other method of determining the appropriate quantity would be arbitrary and capricious. The court did not otherwise explain whether it credited Johnson's estimate that Candie sold 1350 grams of crack during the summer of 1989, or did not fully credit that testimony but was satisfied, for reasons it did not articulate, that the conspiracy was responsible for more than 50 kilograms of cocaine equiva-

lent during the period that Candie was Johnson's partner.[3]

After sentencing, a two-page document entitled "Court Findings/Determinations Concerning Controverted Matters in Presentence Report" was attached to the PSR. This report states that, "The Court determined the amount of crack cocaine distributed by the defendant was 1,350 grams ... and that the base offense level calculated in the Presentence Report of 36 was correct." Although the report was signed by the Probation Officer, it appears to clarify that the court based its quantity determination on Johnson's trial testimony. However, the question remains whether the district court found Johnson's testimony as to quantities to be credible, a finding that would be virtually unreviewable, or made its ultimate finding as to quantities because "I have no alternative but to accept that evidence," which would be an error of law. Like any other factfinder who assesses witness credibility, the sentencing judge is free to believe all, some, or none of a witness's testimony.

Although we are extremely reluctant to impose additional procedures on the district court, strict compliance with Rule 32(c)(3)(D)'s requirement that the court make a finding as to each controverted material fact in the PSR is essential to meaningful appellate review and the fairness of the sentencing process. *See United States v. Granados,* 962 F.2d 767, 771–72 (8th Cir.1992). Accordingly, without expressing any opinion as to the credibility of Johnson's quantity testimony or the correctness of Candie's sentence, we vacate that sentence and remand for resentencing.

█

---

**3.** For example, Johnson testified that he and Candie purchased about 25 kilograms of cocaine in Chicago, Kansas City, and Houston between April 1989 and June 1990. Even if some of this cocaine was converted into only

400–500 grams of crack to meet the conspiracy's crack competitors during the summer of 1989, the conspiracy still functioned at a base offense level of 36.