994 F.2d 417
 38 Fed. R. Evid. Serv. 472
 UNITED STATES of America, Plaintiff-Appellee,
v.
Fred EDWARDS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael JONES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herman McGEE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Judy MASON, Defendant-Appellant.
 Nos. 91-2611, 91-2612, 91-2677 and 91-2929.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Sept. 17, 1992.
Decided March 30, 1993.
Rehearing and Suggestion for
Rehearing En Banc Denied
May 18, 1993 in No. 91-2677;
May 19, 1993 in Nos. 91-2611 and 91-2612;
May 27, 1993 in No. 91-2929.
 
 Nathan Cohen (argued), St. Louis, MO, for Fred Edwards and Michael Jones.
 Richard Sindel (argued), Clayton, MO, for Herman McGee.
 Donald Gerard (argued), Clayton, MO, for Judy Mason.
 Steven Holtshouser, Asst. U.S. Atty. (argued), St. Louis, MO, for appellee.
 Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Fred Edwards, Jr., Michael Jones, Herman McGee, and Judy Mason were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. McGee was also convicted of two counts of using firearms in connection with this drug trafficking crime in violation of 18 U.S.C. § 924(c). Edwards, McGee, and Jones appeal their March 20, 1991, convictions, and all four appeal their lengthy sentences. We affirm the district court.[1]
 
 
 2
 I. Factual Background.
 
 
 3
 The government's main trial witness was Michael Barnes, a contractor turned cocaine dealer turned government informant. McGee hired Barnes in 1982 to work on McGee's home at 4238 East Lexington in St. Louis. McGee introduced Barnes to Mason and Edwards. Edwards introduced Barnes to Jones. While working on the homes of McGee, Edwards, and Jones, Barnes witnessed numerous drug transactions involving the three men. Enticed by the easy money his new friends were making, Barnes "invested" $300.00 with Jones, who purchased cocaine from Edwards. Barnes sold this cocaine, reinvested in increasingly larger purchases, and eventually started buying cocaine directly from Edwards.
 
 
 4
 In April 1989, McGee told Barnes that he could beat Edwards's prices. Two days later, Barnes, McGee, and Mason met at McGee's home. McGee said that he would fill minimum orders of one half kilogram for $11,500, and that Mason would make the deliveries. The next day, Barnes ordered a half kilogram; Mason delivered the order to Barnes's home that same day. Between April and September 1989, Jones and Barnes purchased cocaine together from McGee in amounts ranging from one-half to one-and-one-half kilograms. Edwards was now Barnes's customer, as was Jones on some occasions. As agreed, Mason always made the deliveries to Barnes, except for one instance when Barnes picked up an order directly from McGee. Barnes estimated that he purchased ninety-three kilograms of cocaine from McGee during this period.
 
 
 5
 Barnes was arrested on September 21, 1989, and agreed to cooperate with law enforcement officials. Barnes named only Edwards as his source of cocaine, and Barnes and McGee agreed to cease doing business. Barnes remained inactive for several months, but by early 1990 he and Jones were again buying cocaine together. When Barnes saw Mason make a delivery to Jones, he inferred that McGee was Jones's source.
 
 
 6
 On February 15, police learned that Barnes had reentered the cocaine trade when a detective heard Edwards instructing Barnes to pick up drugs at Jones's house at 2600 Whittier. After receiving assurances of witness protection, Barnes disclosed McGee's involvement in the conspiracy. On March 7, McGee told Barnes that a shipment of five kilograms of cocaine had arrived and was available for sale. Acting on police instructions, Barnes ordered a half kilogram. Barnes told police that McGee and Mason would probably break the cocaine down at Mason's home at 5208 Alcott and then make deliveries to Barnes, Jones, and others that evening.
 
 
 7
 On the evening of March 7, following extensive surveillance, Mason and her son were arrested after delivering a package to Jones and arriving at the place where Barnes was to receive his order. The arresting officers seized a bag of cocaine from underneath the front passenger seat of Mason's car, and another from her purse. McGee was also arrested that evening, and search warrants were executed at 5208 Alcott, 4238 Lexington, 2600 Whittier, several safe deposit boxes associated with either McGee or his wife, and a room that McGee rented at 1907 Annie Malone. These searches yielded drug paraphernalia, currency, weapons, documents, and photographs. McGee and Mason were subsequently released.
 
 
 8
 All the appellants were arrested on August 2, 1990, and police conducted additional searches at 4238 Lexington, 5208 Alcott, and 2600 Whittier plus searches of Jones's second home and two businesses where Edwards had worked. Drug paraphernalia, cocaine, firearms, currency, vehicles, documents, and photographs were seized. At trial a DEA expert witness testified that the seized cocaine most likely came from one source because it was cut with procaine, a relatively rare adulterant.
 
 
 9
 II. Sufficiency of the Evidence.
 
 
 10
 A. The Conspiracy. McGee, Jones, and Edwards argue that their convictions must be reversed because there was insufficient evidence to convict them of the single conspiracy charged in the indictment. We review the evidence in the light most favorable to the verdict. See United States v. Askew, 958 F.2d 806, 810 (8th Cir.1992); United States v. Pou, 953 F.2d 363, 369 (8th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1982-83, 118 L.Ed.2d 580 (1992).
 
 
 11
 There was more than enough evidence from which the jury could rationally conclude that McGee was deeply involved in a cocaine conspiracy with Mason, Jones, and Edwards, compare United States v. Ivey, 915 F.2d 380, 384-85 (8th Cir.1990), and that Jones and Edwards were full participants in the conspiracy and not merely involved in buyer-seller relationships with other conspirators, compare United States v. Schmidt, 922 F.2d 1365, 1369 (8th Cir.1991). To prove conspiracy, the government must prove that each defendant
 
 
 12
 knowingly contribute[d] to the furtherance of the conspiracy. Knowing contribution requires some element of cooperation beyond mere knowledge of the existence of the conspiracy. An agreement may include the performance of many transactions, and new parties may join or old parties terminate their relationship with the conspiracy at any time.... The government need not prove that the defendant knew all the conspirators or was aware of all the details.
 
 
 13
 Askew, 958 F.2d at 810. Here, the evidence does not depict a loose amalgam of fully independent buyers and sellers, but an integrated network of cocaine distributors who were well aware of each other's activities.
 
 
 14
 Appellants argue that the government's evidence proved the existence of two wholly separate conspiracies. But "[m]ultiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists." Pou, 953 F.2d at 369. The district court specifically instructed the jury that, "the Government must show that the single overall conspiracy alleged in Count I of the indictment existed." This was a question for the jury, and ample evidence supports its verdict.
 
 
 15
 B. McGee's Firearms Convictions. McGee was convicted on two counts of using or carrying a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c). One count was based upon four firearms seized at McGee's home in March 1990; the other was based upon two firearms found at the same location in August 1990. McGee argues that these convictions must be reversed because there was no evidence that drug transactions occurred at his home or that he stored drugs there.
 
 
 16
 McGee reads § 924(c) too narrowly. Although possession of a firearm alone is not sufficient to prove a violation, § 924(c) "reaches the possession of a firearm which in any manner facilitates the execution of a felony." United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985). During the March and August searches of McGee's home, police found large amounts of cash stored in unlikely places, and weapons in close proximity to the cash. "[A] large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transactions." LaGuardia, 774 F.2d at 320. Protection of drug proceeds furthers a drug trafficking crime, and use of a firearm to guard such proceeds therefore violates § 924(c). See United States v. Reyes, 930 F.2d 310, 313-14 (3d Cir.1991). Thus, the evidence connecting McGee's firearms to his illegal cocaine activities was sufficient to support the § 924(c) convictions.
 
 
 17
 III. Admissibility of Taped Conversations.
 
 
 18
 Barnes recorded a number of his conversations with McGee, Jones, and Edwards. Tapes of a conversation between Barnes and McGee on April 3, 1990 ("the McGee Tape"), and a conversation between Barnes and Jones on April 11, 1990 ("the Jones Tape"), were played at trial. The conversations described the roles of various conspirators and discussed who might have been responsible for the March 7 arrests.[2] McGee argues that he is entitled to a new trial because the Jones Tape was inadmissible hearsay, because the tapes were inaudible, and because the district court erred by allowing the prosecution to play only selected portions of the tapes.
 
 
 19
 A. The Conspirator Hearsay Issue. Statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay. Fed.R.Evid. 801(d)(2)(E). Using the procedure approved in United States v. Bell, 573 F.2d 1040, 1044 (8th Cir.1978), the district court conditionally admitted the tapes and then found at the close of the government's evidence that the government had proved the existence of the conspiracy at the time of the taped conversations by a preponderance of the evidence. We review this finding for clear error. See United States v. Meeks, 857 F.2d 1201, 1203 (8th Cir.1988). As our prior review of the evidence makes clear, the trial court's Bell ruling was not clearly erroneous.
 
 
 20
 McGee argues that the conversation recorded in the Jones Tape was not made "during the course of" the conspiracy because the conspiracy had ended by April 11, 1990. A conspiracy "is presumed to exist until there has been an affirmative showing that it has terminated, and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." United States v. Lewis, 759 F.2d 1316, 1343 (8th Cir.), cert. denied, 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985). To withdraw from a conspiracy, a conspirator must "either [make] a clean breast to the authorities or [communicate] his withdrawal in a manner reasonably calculated to reach co-conspirators." Askew, 958 F.2d at 812-13. Here, there was overwhelming evidence that the conspiracy continued beyond April 11, 1990, and no evidence that McGee had affirmatively withdrawn.
 
 
 21
 McGee also argues that the conversation was not "in furtherance of" the conspiracy. This term is interpreted broadly. See United States v. Johnson, 925 F.2d 1115, 1117 (8th Cir.1991). Statements are admissible under 801(d)(2)(E) if the overall effect of the conversation is to facilitate the conspiracy. See United States v. Leisure, 844 F.2d 1347, 1361-62 (8th Cir.), cert. denied, 488 U.S. 932, 960, 109 S.Ct. 324, 403, 102 L.Ed.2d 342 (1988). The Jones Tape conversation covered many subjects, including the identity of the informant responsible for the March 7 arrests, McGee's arrangements with Jones and Barnes, and McGee's relationship with Mason. The evidence establishes that much of this conversation was in furtherance of the cocaine conspiracy. See United States v. Krevsky, 741 F.2d 1090, 1095 (8th Cir.1984) (discussion of conspirators' duties and particulars of their operations); Meeks, 857 F.2d at 1203 (statements identifying a source of cocaine). Thus, the Jones Tape was properly admitted.
 
 
 22
 B. Issues of Audibility and Selective Playing. Prior to trial, the district court denied McGee's motion for a pretrial hearing to determine the audibility of some 32 tapes that the government might offer. At trial, the government first offered to play portions of the McGee Tape after it was identified by Barnes. The district court permitted the government to play selected portions of the tape but sustained defense objections to the use of government-prepared transcripts of the tape, explaining that, "I'm interested in what they [the jurors] hear." As the tapes were played, there was considerable sidebar colloquy about whether the listener was able to identify who was speaking and about the poor audibility of portions of the tapes. However, no defense counsel objected during trial that the tapes were so inaudible that they should not be played at all, or requested that portions in addition to those selected by the government also be played. During its deliberations, the jury asked to replay one of the tapes; the district court sustained defense objections to this procedure.
 
 
 23
 On appeal, McGee argues that the district court abused its discretion by not listening to the tapes before they were played to the jury, and by permitting the prosecution to break "the chain of recorded conversation" and confuse the jury by playing only select portions of the tapes. These issues were not preserved by proper objections at trial. Moreover, the district court's rulings on questions of audibility are reviewed only for abuse of discretion. See United States v. Nicholson, 815 F.2d 61, 62 (8th Cir.1987). The procedure adopted by the district court--largely at defense counsels' urging--was a fair and reasonable exercise of its discretion. Finally, because the district court downplayed the significance of the tapes by excluding the government's offer of transcripts and by refusing to allow the jury to replay the tapes during its deliberations, any error was harmless.
 
 
 24
 IV. Sentencing Issues.
 
 
 25
 Appellants were sentenced in June and July of 1991. As recommended in their detailed presentence reports, each was assigned a base offense level of 36 based upon Barnes's trial testimony that he purchased 93 kilograms of cocaine from McGee between April and September 1989. McGee received a four-level enhancement for his leadership role in the conspiracy and was sentenced to forty-five years in prison. Mason received a two-level enhancement for her role in the offense and a 240-month sentence. Edwards received a two-level enhancement for his managerial role in the offense and a 240-month sentence. Jones also received a 240-month sentence.
 
 
 26
 A. Quantity Determinations. All four appellants challenge the district court's findings attributing 93 kilograms of cocaine to each of them, findings we review under the clearly erroneous standard. See, e.g. United States v. Comeaux, 955 F.2d 586, 591 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 135, 387, 121 L.Ed.2d 89 (1992).
 
 
 27
 McGee and Mason argue that the district court failed to make adequate findings as to quantity. Mason relies on our decision in United States v. Candie, 974 F.2d 61 (8th Cir.1992), while McGee relies on Fed.R.Crim.P. 32(c)(3)(D). We reject both arguments. We remanded in Candie because the sentencing judge's comment, "I assume I have no alternative but to accept that [trial] evidence," left us uncertain how the court had resolved defendant's quantity objection to the PSR. See 974 F.2d at 65. In this case, the district court's comments at the sentencings, and its specific overruling of appellants' quantity objections to the PSRs, make it clear that the court credited Barnes's quantity testimony for sentencing purposes. This was an issue of Barnes's credibility, and findings on "question[s] of witness credibility and weight of the evidence ... are entitled to particularly great deference." United States v. Funk, 985 F.2d 391 (8th Cir.1993). The district court's quantity findings were sufficient under Rule 32(c)(3)(D) and Candie and were not clearly erroneous.[3]
 
 
 28
 Mason also argues that she only delivered thirty-three kilograms, and that the rest of the cocaine was distributed before she joined the conspiracy. Under the Guidelines, Mason is accountable "for all quantities of contraband with which [s]he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [s]he jointly undertook." U.S.S.G. § 1B1.3 n. 2.[4] Barnes testified that Mason was present in April 1989 when McGee and Barnes agreed that Mason would deliver any cocaine that Barnes ordered from McGee. According to Barnes, Mason helped McGee break the cocaine down and made all but one delivery to Barnes. Thus, for sentencing purposes, Mason was "directly involved" in the 93 kilograms distributed pursuant to the Barnes/McGee relationship.
 
 
 29
 Edwards and Jones argue that the district court erred in failing to make specific findings that all ninety-three kilograms of cocaine were "reasonably foreseeable quantities" of their joint criminal activity. See U.S.S.G. § 1B1.3 n. 2. The PSRs of Edwards and Jones recited in great detail their roles in the conspiracy, based primarily upon the trial testimony of Barnes. When Edwards and Jones filed objections to the quantities attributed to them, the probation officers responded in lengthy PSR addenda. At sentencing, neither Edwards nor Jones commented on this issue nor alleged any factual inaccuracy in their PSRs. Thus, there were no controverted factual matters requiring specific findings under Fed.R.Crim.P. 32(c)(3)(D). The sentencing judge, who had presided at trial, expressly overruled all objections that affected sentence and found that the quantities attributed to Edwards and Jones in their PSRs were accurate. On this record, those findings were sufficient and were not clearly erroneous.
 
 
 30
 B. McGee's Consecutive Firearms Sentences. McGee argues that the district court erred in imposing consecutive sentences for two firearms convictions that were based upon one underlying drug trafficking offense. This argument is foreclosed by our decision in United States v. Lucas, 932 F.2d 1210, 1221-23 (8th Cir.1991), cert. denied, --- U.S. ----, ----, ----, ----, 112 S.Ct. 199, 399, 609, 1186, 116 L.Ed.2d 348, 632, 117 L.Ed.2d 429 (1991-92). In Lucas, defendant was convicted of two § 924(c) counts for two weapons found in his home. Both counts were based on the same underlying drug charge, but the district court determined that the weapons had different uses--one protected the defendant, his family, his personal supply of drugs, and his drug proceeds, while the other protected his lab and its large drug inventory. We upheld the consecutive sentences, concluding that "each separate use of a firearm in relation to a ... drug trafficking crime is punishable under section 924(c) regardless of whether other section 924(c) charges are related to the same predicate offense." Lucas, 932 F.2d at 1223.
 
 
 31
 Here, the two firearm counts were based upon two separate seizures of weapons at McGee's home: one in March and one in August 1990. We agree with the district court that the use of different weapons at different times--even if for the same general criminal purposes--constitutes two separate § 924(c) offenses for which consecutive sentences may be imposed under Lucas. From the standpoint of § 924(c)'s purpose to deter uses of firearms, McGee's decision to restock his home after four weapons were seized in March 1990 distinguishes this case from United States v. Freisinger, 937 F.2d 383, 392 (8th Cir.1991), in which we held that consecutive § 924(c) sentences could not be imposed when four weapons were seized during an inventory search of defendant's car.
 
 
 32
 C. Organizer/Leader Enhancements. McGee argues that the district court erred in assessing a four-level enhancement for leading a criminal activity "that involved five or more participants or was otherwise extensive." See U.S.S.G. § 3B1.1(a). The evidence at trial, as summarized in McGee's PSR, established that the conspiracy was extensive and had at least five participants--McGee, Mason, Edwards, Jones, and Barnes, see United States v. Harry, 960 F.2d 51, 53 (8th Cir.1992) (the defendant counts); that large amounts of cash were found in McGee's home; and that McGee always arranged the drug transactions and dictated the minimum quantities dealers must purchase. A defendant who profits from cocaine sales, sells to mid-level distributors, and establishes the terms of the transactions fits the "broad definition of those subject to enhanced sentences under § 3B1.1." United States v. Schwarck, 961 F.2d 121, 123 (8th Cir.1992). The district court made a specific finding at sentencing that "this was a leadership role which you occupied." That finding justified the four-level enhancement and was not clearly erroneous.
 
 
 33
 Mason argues that the district court erred in assessing her a two-level enhancement as a leader or supervisor because she supervised her son, broke the cocaine down with McGee at her residence, and delivered cocaine to various dealers. See U.S.S.G. § 3B1.1(c). Although Terrence Mason was acquitted of the conspiracy charge, he was convicted of the lesser-included offense of possession of cocaine, and several witnesses testified that Terrence accompanied his mother on at least one delivery and attempted to hide the cocaine they were delivering at the time of their arrest. In determining whether to assess a § 3B1.1 enhancement, "the court may consider the defendant's leadership role over acts either that were a part of the crime of conviction or that furthered that crime." United States v. Sutera, 933 F.2d 641, 649 (8th Cir.1991). The district court's determination that Mason played a leadership or supervisory role in the conspiracy was not clearly erroneous.
 
 
 34
 V. Other Issues.
 
 
 35
 McGee raises four other issues on appeal that do not require extended discussion. First, he argues that he is entitled to a new trial because the district court did not question or replace two jurors when defense counsel said they appeared to be sleeping. "The decision of whether or not to remove a juror is normally vested in the wise discretion of the trial court." United States v. Key, 717 F.2d 1206, 1209 (8th Cir.1983). Here, when the issue was raised at trial, the court agreed this was a legitimate concern but advised, "I've watched them all. I've noticed nobody sleeping." No party complained of sleeping jurors during the rest of the trial. Thus, there was no abuse of discretion.
 
 
 36
 Next, McGee argues that he should have been granted a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because of a typographical error in the affidavit underlying the warrant for one search of his home. However, McGee did not request a Franks hearing in the district court, and the failure to conduct a hearing sua sponte was not plain error. McGee has not established that the error in the affidavit was a "deliberate falsehood," that it exhibited "reckless disregard for the truth," or that it cast doubt on the affidavit's showing of probable cause to search his home. See Franks, 438 U.S. at 171-172, 98 S.Ct. at 2684-2685.
 
 
 37
 McGee next argues that the district court erred in precluding him from cross-examining police officers about a statement he made after his March 1990 arrest. When police discovered a large amount of cash at McGee's residence, he told them that he made private loans to other people. McGee argues that this explanation of the money's origin was a declaration against his penal interest--because it implied that he was involved in "loan sharking"--that was admissible under Fed.R.Evid. 804(b)(3). However, McGee made this statement immediately after his arrest on suspicion of drug trafficking. The statement might have suggested illegal loan activity, but it was clearly exculpatory as to the more serious drug charges. Thus, it did not, in the words of 804(b)(3), "so far [tend] to subject [McGee] to ... criminal liability ... that a reasonable person in [his] position would not have made the statement unless believing it to be true." See United States v. Williams, 738 F.2d 172, 178 (7th Cir.1984). The district court did not abuse its discretion in excluding this hearsay statement. See United States v. Seabolt, 958 F.2d 231, 233 (8th Cir.1992).
 
 
 38
 Finally, McGee argues that the district court's instruction No. 36 improperly required him to prove that he did not intend the results of his actions. McGee did not object to this instruction when the jury was charged. We have carefully reviewed the instruction and conclude that it properly authorized a permissive rather than a mandatory inference of intent from surrounding circumstances. Compare Francis v. Franklin, 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985), with Sandstrom v. Montana, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). We upheld an almost identical instruction in United States v. Cerone, 830 F.2d 938, 946 (8th Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). The district court did not commit plain error in giving this instruction.
 
 
 39
 The judgments of the district court are affirmed.
 
 
 
 [1]
 The HONORABLE WILLIAM L. HUNGATE, Senior United States District Judge for the Eastern District of Missouri, now retired
 
 
 [2]
 Neither the tapes nor their transcripts are part of the record on appeal. The substance of the conversations has been gleaned from Barnes's testimony
 
 
 [3]
 Barnes testified that he purchased about 93 kilograms of cocaine from McGee between April and September 1989. There was evidence that appellants engaged in numerous transactions both before and after that period. Base offense level 36 applies to at least 50 but less than 150 kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(4). In these circumstances, the district court's quantity determinations were reasonable approximations that, if anything, probably understated the magnitude of the conspiracy
 
 
 [4]
 This language was added in a clarifying amendment to § 1B1.3 effective November 1, 1992. See U.S.S.G.App. C, p 439