**UNITED STATES of America, Appellee,**

v.

**John D. BEHLER, Appellant.**

No. 92–3956.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1993.

Decided Jan. 24, 1994.

James R. Mowbray, Lincoln, NE, argued for appellant.

Paul D. Boeshart, Lincoln, NE, argued for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

John D. Behler appeals his convictions and sentences for drug trafficking violations. He argues that the district court[1] mishandled allegations of jury tampering, improperly failed to suppress his confession, and improperly answered a question from the jury during deliberations; that there was insufficient evidence to support his convictions on two counts; that his sentences should be vacated because the district court sentenced him under the wrong version of the United States Sentencing Guidelines; and that the district court erred in determining the quantity of methamphetamine and his role in the offense, in finding that he obstructed justice, and in relying on ex parte information from a probation officer. We affirm his convictions but vacate his sentences on Counts I, III, and IV and remand for resentencing on those counts.

## I.

From 1984 to 1989, Behler lived on an acreage in Dunbar, Nebraska. Linda Wiegert lived on the acreage with him from 1984 to 1987. She testified at trial that during that time Behler made numerous trips to Colorado to purchase methamphetamine from a person named Tom McRea. She further testified that he always kept a .44 magnum handgun with him at home and on the trips.

Nora Lysenko Houston moved in with Behler sometime in 1987, after Ms. Wiegert moved out. Ms. Houston also testified at trial that Behler made numerous trips to Colorado to buy methamphetamine from Tom McRea. She too testified that Behler always carried a handgun with him.

In 1989, the Nebraska State Patrol began monitoring Behler's telephone calls. On May 15, 1989, they intercepted a call from Joseph Hiykel about a drug transaction that was going to occur at Behler's residence that day. They maintained surveillance on Behler's acreage. Hiykel drove to Behler's acreage and stayed about 30 minutes. Law enforcement officers stopped and arrested Hiykel after he left the acreage. They found a package of methamphetamine in Hiykel's possession. Hiykel testified at trial that he

---

1. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

purchased the methamphetamine from Behler.

Law enforcement officers arrested Behler at his acreage minutes after they arrested Hiykel. They searched the acreage pursuant to a search warrant they had obtained earlier and found, among other things, a plastic bottle containing inositol, a loaded .44 magnum handgun, and a small amount of methamphetamine. Behler was placed in the county jail. Later that evening, law enforcement officers interviewed Behler, and after being advised of his *Miranda* rights, he confessed to his involvement in substantial drug trafficking activity.

A federal grand jury indicted Behler on four drug-trafficking counts. Count I charged Behler with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. Count II charged Behler with use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Count III charged Behler with use of a telephone in furtherance of a drug felony in violation of 21 U.S.C. § 843(b). Count IV charged Behler with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He stood trial on all counts August 12–18, 1992. The jury returned a verdict of guilty on all counts August 19, 1992.

The district court sentenced Behler on Counts I, III, and IV to 168 months' imprisonment for each count, to be served concurrently. The district court sentenced Behler on Count II to 60 months' imprisonment, to be served consecutively to the sentence on the other counts. Behler filed this appeal.

## II.

Behler first contends that his convictions should be reversed because the district court mishandled incidents of potential jury tampering. On the fourth day of trial, the district judge informed counsel for both parties that two jurors had reported such incidents. One juror reported receiving a telephone call the previous evening from an unidentified caller asking her if she was on the jury, to which she responded that she was not and terminated the call. Another juror reported someone had knocked on his window late at night a couple of days earlier.

The court and counsel questioned both of the jurors individually in the district judge's chambers. Both jurors indicated that they believed the incidents were related to their jury service, but both stated that they could continue to keep an open mind and reach a fair verdict. One of the jurors told the court that the other members of the jury were aware of the incidents and many of them also were concerned.

The court asked the parties for suggestions on further proceedings. Behler's counsel suggested that the district judge talk to the entire jury without either side being present and report back to counsel if he determined there was any problem with prejudice or bias. Behler's counsel thought the jurors might be more open about their feelings without the parties present. The court and the government agreed. Behler's counsel stated that if the judge did not detect any bias or prejudice, then Behler would "let it be at that and end the inquiry." (Tr. at 568).

The district judge's conversation with the jury was reported by the court reporter. The district judge told the jury that he was virtually certain that Behler did not personally make the telephone call or knock on the window. The judge then asked the jury whether they were fearful that anything would happen to them or their families and if they would be influenced by these incidents. Two jurors responded that they were not worried, but one juror voiced concern that defendant and defense counsel had access to their names. No other jurors responded. The judge agreed to collect all juror information sheets from both parties and to refer to the jurors by number instead of name for the remainder of the trial. The judge then asked the jury a final time whether they were concerned that their "ability to decide this case uninfluenced one way or the other had been jeopardized?" All jurors indicated they were not concerned. (Tr. at 569–79).

The district judge then reported to the parties that he was confident the trial could proceed because there was no indication the jurors' decisions in this case would be affected by the incidents. The district judge then

asked the parties to return all juror information. The trial resumed without further objection.

Behler asserts on appeal that these incidents of extrajudicial contact were prejudicial and that he should receive a new trial. In *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), the Supreme Court stated:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial.... The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

The presumption of prejudice "may be rebutted, where ... the proper reaction of the court establishes that the defendant has not been prejudiced." *United States v. Rowley,* 975 F.2d 1357, 1363 (8th Cir.1992) (citing ·*Remmer,* 347 U.S. at 229, 74 S.Ct. at 451). The district court "should determine the circumstances, the impact [of the improper contact] upon the juror[s], and whether or not it was prejudicial, in a hearing with all interested parties *permitted* to participate." *Remmer,* 347 U.S. at 230, 74 S.Ct. at 451 (emphasis added). Behler asserts that the district court's hearing with the jury did not comply with the requirements of *Remmer.*

■ Behler failed to object to the procedures used by the district court or to request a mistrial after the district court spoke with the jurors. Accordingly, Behler is entitled to a new trial only if the district court committed plain error resulting in a miscarriage of justice. *United States v. Schau,* 1 F.3d 729 (8th Cir.1993). We find no plain error and no miscarriage of justice in this case.

Behler waived his right to participate in the questioning of the entire jury by requesting that neither of the parties be included. *See United States v. Gagnon,* 470 U.S. 522, 527–29, 105 S.Ct. 1482, 1484–86, 84 L.Ed.2d 486 (1985) (per curiam). Behler believed it would be to his benefit if neither of the parties was involved, anticipating that the

jurors would be more candid if the court performed the inquiry alone. The district court substantially complied with the *Remmer* requirements to determine if there was any prejudice because it *permitted* Behler to participate, but Behler declined. While the trial judge generally should not conduct any part of the hearing ex parte, *United States v. Butler,* 822 F.2d 1191, 1196 (D.C.Cir.1987) (citing *Remmer,* 347 U.S. at 229–30, 74 S.Ct. at 450–51), ex parte hearings have been upheld where the circumstances warrant and fundamental fairness is not sacrificed. *See, e.g., Gagnon,* 470 U.S. at 527, 105 S.Ct. at 1484 (approving procedure where only one of four defendants present at examination of juror when other three did not request to be present); *United States v. Aiello,* 771 F.2d 621, 630 (2d Cir.1985) (approving court's ex parte interview of jurors without court reporter present where the court immediately informed counsel after the questioning); *United States v. Buchanan,* 633 F.2d 423, 427 (5th Cir.1980) (approving procedure where district judge, court reporter, and law clerks were only parties present for jury questioning), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 301 (1981); *United States v. Boscia,* 573 F.2d 827, 831 (3d Cir. 1978) (counsel not present for juror questioning but had not requested to be present and were given full transcript of the questioning), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978). This was not an ex parte hearing because both sides knew about it in advance, had the chance to participate, declined to do so, and raised no objection. It was a hearing conducted without either party's presence. We find that the hearing was justified in this case, and therefore, we find no violation of *Remmer.*

Moreover, we find no miscarriage of justice as the district court properly established that there was no prejudice. The district court specifically questioned all of the jurors about their ability to render an unbiased decision in this case. The district court found no bias and communicated its finding to the parties. We give "substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury, since the trial judge has the advantage of

close observation of the jurors and intimate familiarity with the issues at trial." *Rowley,* 975 F.2d at 1363 (quoting *United States v. Cheyenne,* 855 F.2d 566, 568 (8th Cir.1988)). There is nothing in the record that indicates the district court erred in finding that none of the jurors were prejudiced by the incidents.

### III.

■ Behler next asserts that the district court should have suppressed his confession. After an accused party requests counsel, law enforcement officials. must cease interrogation efforts until counsel has been made available to the accused unless the accused initiates further contact with the officers. *Edwards v. Arizona,* 451 U.S. 477, 484–86, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Behler asserts that law enforcement officials violated *Edwards* because they obtained his confession after he requested and was denied counsel. He contends the trial court erred in denying his suppression motions.

Behler's argument is based on his assertion that he requested counsel after he was arrested. The district court on two different occasions found, however, that he did not request counsel prior to giving his confession. First, a suppression hearing was held prior to trial before a magistrate judge.[2] The magistrate judge issued a report and recommendation finding that Behler did not request counsel after he was arrested or during interrogation. The magistrate judge also found that Behler was advised of and waived his *Miranda* rights prior to making his confession. Behler did not object to the magistrate judge's findings, and the district judge adopted the report and recommendation. Second, the district judge held another hearing during trial, out of the presence of the jury, to determine whether Behler's confession was voluntary under 18 U.S.C. § 3501. The district judge, in ruling that the confession was voluntary, found that Behler was advised of his *Miranda* rights but did not request counsel during the interview when he made his confession. Hence, in order for Behler to prevail on his suppression argument, he must establish that the district court erred in finding that he never requested counsel.

■ We review the district court's finding that Behler failed to request counsel under a clearly erroneous standard. *United States v. Capers,* 685 F.2d 249, 252 (8th Cir.1982). Law enforcement officers testified at both suppression hearings that Behler did not request counsel before he made his confession. The district court rejected Behler's version of the facts. The district court's findings are not clearly erroneous. Hence, based on the district court's finding that Behler never requested an attorney, we find no violation of *Edwards* and no reason to suppress the confession.

### IV.

■ Behler next argues that the district court erred in responding to a question from the jury during deliberation. The jury submitted a written note to the court asking: "Does Thomas Stephen McRea have to be a part of the conspiracy to enable a guilty verdict on Count # 1?" The court answered the question "no." Behler argues that the court violated his due process rights under the Fifth Amendment by answering the question as it did.

The indictment charged Behler in Count 1 with conspiring "with Thomas Stephen McRea and others" to distribute methamphetamine. The district court instructed the jury that one of the essential elements of the conspiracy charge under Count 1 was:

> That between on or about March 1, 1984, and on or about May 16, 1989, the defendant, John D. Behler, had an agreement or understanding *with one or more other persons, including Thomas Stephen McRea,* to commit the crimes of distributing methamphetamine or possession of methamphetamine with intent to distribute it.

(emphasis added). Behler asserts that the district court's answer changed the instruction and unfairly undermined his presentation of the case and, in particular, his closing

**2.** The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

argument in violation of his due process rights.

We disagree. We have repeatedly stated that:

> The response to a jury request for supplemental instructions is a matter within the sound discretion of the district court. A trial judge must be painstakingly impartial any time he communicates with the jury during deliberation. He must insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial.

*United States v. Suppenbach,* 1 F.3d 679, 683 (8th Cir.1993) (citations omitted); *see also United States v. Gibbons,* 968 F.2d 639, 646 (8th Cir.1992). Further, the trial judge should answer "with concrete accuracy," *Gibbons,* 968 F.2d at 646, and "within the specific limits of the question presented." *United States v. Arpan,* 887 F.2d 873, 877 (8th Cir. 1989) (en banc) (quoting *United States v. Neiss,* 684 F.2d 570, 572 (8th Cir.1982)). We find that the district court's answer to the jury question complied with our standards. The district court provided a short, concrete answer clearly within the limits of the question the jury posed.

The issue in this case is very similar to an issue presented in *United States v. Lueth,* 807 F.2d 719, 732–34 (8th Cir.1986). The defendant in *Lueth* was charged in the indictment with conspiracy to distribute cocaine *and* marijuana. The court instructed the jury that one element of the conspiracy offense was that the defendant entered into the conspiracy with the purpose of distributing cocaine *and* marijuana. During the third day of deliberation, the jury sent a note to the court asking whether they had to find that the purpose of the conspiracy was to distribute both marijuana and cocaine to find the defendant guilty on the conspiracy charge. The court responded by instructing the jury that they could find him guilty of conspiracy to distribute cocaine *or* marijuana *or* both.

On appeal, Lueth argued that the judge's answer allowed the jury to convict him of a crime which was not charged by the grand jury. We affirmed, reasoning that "by changing the language of the prior instruction from the conjunctive to the disjunctive,

'what was removed from the case was in no way essential to the offense on which the jury convicted.'" *Id.* at 734 (quoting *United States v. Miller,* 471 U.S. 130, 145, 105 S.Ct. 1811, 1819–20, 85 L.Ed.2d 99 (1985)). We specifically addressed Lueth's argument that the supplemental instruction undermined the effectiveness of his defense, and in particular, his closing argument. *Id.* at 734 n. 7. We rejected that argument finding that the defendant had not argued that "the supplemental instruction misstated the law, or was misleading to the jury" and that his closing argument did not rise or fall on a conjunctive reading of the charge. *Id.* We find the rationale of *Lueth* applicable to this case and conclude the district court did not abuse its discretion in answering the jury's question.

### V.

Behler next argues that the government produced insufficient evidence to support his convictions on Count I, the conspiracy to distribute methamphetamine, and Count II, use of a firearm in relation to a drug trafficking offense. We disagree.

In reviewing the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the government." *United States v. Nelson,* 984 F.2d 894, 898 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993). We draw all reasonable inferences from the evidence in favor of the government and resolve all conflicts in the evidence in favor of the government. *Id.* at 898–99. Viewed from that perspective, there is more than sufficient evidence to support the verdict.

The testimony of Linda Wiegert and Nora Houston, and Behler's own confession, provide strong evidence of Behler's involvement in a conspiracy to distribute methamphetamine and his use of a firearm during a drug trafficking crime. Wiegert and Houston both testified that Behler made repeated trips to Colorado to obtain methamphetamine from Tom McRea and that he brought the drugs back to Nebraska and prepared them with and delivered them to a regular group of customers. Wiegert and Houston both

testified that Behler always carried a .44 magnum handgun with him on the trips to Colorado and everywhere else he went with the drugs. Wiegert stated that Behler called the gun "his protection."

Behler confessed to law enforcement officials that he made numerous trips to Colorado to acquire methamphetamine from Tom, who was his regular source. He admitted that he sold the drugs to a group of people in Iowa and Nebraska. Many of the people he admitted selling to were the same people to whom Wiegert and Houston stated that he normally sold the drugs.

We find this evidence more than sufficient to establish Behler's guilt on Count I and Count II. Behler asks us to disregard the "incredible" testimony of Wiegert and Houston, as well as his confession, which he argues should have been suppressed. We find no reason to disregard this evidence. The determination of the credibility of Wiegert and Houston and their testimony is for the jury, not the appellate court. *See Nelson,* 984 F.2d at 899. We already have found that his confession was properly introduced into evidence. We find Behler's other arguments about the deficiencies in the evidence unavailing as well.[3]

### VI.

■■■ Behler next argues that the district court's determination of his sentence constituted an ex post facto violation. Behler argues that the district court erred by sentencing him under the Guidelines in effect at the time of his 1992 sentencing rather than the 1987 version of the Guidelines in effect at the time of the illegal conduct ending with his May 15, 1989, arrest. After the parties submitted briefs, but before the case was argued, we found that under the law in this circuit an ex post facto violation occurs "if the defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher

than one permitted under the Guidelines in effect at the time the crime is committed." *United States v. Bell,* 991 F.2d 1445, 1452 (8th Cir.1993).

Here, Behler argues that his sentence was harsher under the 1992 Guidelines because the method for determining methamphetamine quantity was changed subsequent to the 1987 version of the Guidelines. Under the 1987 Guidelines, the quantity of methamphetamine was determined by the weight of the entire substance or mixture containing methamphetamine. U.S.S.G. § 2D1.1(c)(n.*) (1987). Under the 1992 version of the Guidelines, the quantity of methamphetamine was determined *either* by the weight of the entire substance or mixture containing methamphetamine *or* by the "actual" weight of the methamphetamine itself, which is contained in the substance or mixture. U.S.S.G. § 2D1.1(c)(n.*) (1992). The 1992 Guidelines assigned different offense levels for quantity based on "actual" weight of the methamphetamine itself and quantity based on the entire weight of the substance or mixture containing methamphetamine. The 1992 Guidelines provided that the sentencing court should use the weight calculation resulting in the greatest offense level. *Id.*

The district court found Behler responsible for 399 grams of methamphetamine substance or mixture. The district court computed the purity of the methamphetamine at 20–25 percent and found that the "actual" weight of pure methamphetamine was between 79.8 and 99.75 grams. The district court used the "actual" weight for sentencing because it carried an offense level of 30, instead of the substance or mixture weight, which carried an offense level of 26. *See* U.S.S.G. § 2D1.1(c) (1992) (base offense level of 30 for 70–100 grams of methamphetamine (actual) and base offense level of 26 for 100–400 grams of methamphetamine mixture or substance). Behler's base offense level un-

---

3. Behler argues that the evidence at best demonstrates only a "buyer-seller agreement" or multiple conspiracies instead of a single conspiracy. We find that the government presented strong evidence of a single conspiracy. Behler also argues that the evidence did not sufficiently establish a "nexus" between the gun and the drug

trafficking offense. *See United States v. Williams,* 982 F.2d 1209, 1214 (8th Cir.1992) (quoting *United States v. Watson,* 953 F.2d 406, 409 (8th Cir.1992)). We find that the evidence was more than sufficient to demonstrate a "nexus" between the gun and the drug trafficking activity.

der the 1987 Guidelines would have been level 26. *See* U.S.S.G. § 2D1.1(c) (1987). Hence, Behler's sentence was harsher under the 1992 Guidelines than it would have been under the 1987 Guidelines.

The government conceded at oral argument that *Bell* controls this case and that we should remand for resentencing. We agree. Hence, we vacate Behler's sentence on Counts I and IV and remand those counts for resentencing under the Guidelines in effect at the time Behler committed his offenses.

### VII.

The district court already has decided a number of issues that will affect Behler's sentence on remand. Behler asks us to reverse the district court's findings on many of these issues and direct the district court to make new findings on remand. We decline Behler's request.

### A.

█ Behler first contends that the district court erred by using a preponderance of the evidence standard of proof instead of a clear and convincing standard for determining drug quantity involved in the conspiracy. Behler recognizes that we already have decided in this circuit that drug quantity must be proved at sentencing by a preponderance of the evidence. *See United States v. Galloway*, 976 F.2d 414, 424 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993); *United States v. Candie*, 974 F.2d 61, 64 (8th Cir.1992). Behler argues, however, that we have recognized that there might be cases where a sentencing factor has such a disproportionate effect on the sentence that it requires a higher burden of proof than mere preponderance of the evidence. *See United States v. Coleman*, 990 F.2d 419, 421 (8th Cir.1993) (noting due process could require more than mere preponderance where sentencing enhancement factor becomes "tail that wags the dog of the substantive offense") (quoting

*United States v. Townley*, 929 F.2d 365, 369–70 (8th Cir.1991)). In *Townley*, the relevant conduct finding resulted in an 18–level increase in the defendant's base offense level and a seven-fold increase in the permissible sentencing range. Behler asserts that the relevant conduct findings in this case increased his base offense level 16 levels and increased the sentencing range six-and-one-half times.[4] Hence, he contends that the district court should have used a clear and convincing standard of proof in this case.

We disagree. This case is not subject to the due process concerns outlined in *Coleman* and *Townley*. Those cases addressed *uncharged* relevant conduct findings under U.S.S.G. § 1B1.3, which added significant time to the defendant's sentence. *E.g.*, *Townley*, 929 F.2d at 369. In this case, the district court simply made a quantity determination under U.S.S.G. § 2D1.1 for Behler's conspiracy conviction. The Ninth Circuit has found this distinction between an uncharged relevant conduct finding under § 1B1.3 and a drug quantity determination under § 2D1.1 for a conspiracy conviction to be dispositive of the due process concerns. *United States v. Harrison–Philpot*, 978 F.2d 1520, 1523–24 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2392, 124 L.Ed.2d 294 (1993). We agree with the Ninth Circuit and hold that there is no due process violation in this case because Behler was given notice of the drug conspiracy charge and defended against that charge. He was found guilty of that charge, and the district court made a quantity determination in relation to that charge, using the same evidence the jury utilized in its guilt determination, all as provided in U.S.S.G. § 2D1.1(a)(3), without resort to uncharged relevant conduct under § 1B1.3(a)(1). In essence, the district court simply determined the sentencing liability of the activity for which Behler was convicted.

### B.

▪ █ Behler next argues that the district court violated U.S.S.G. § 6A1.3(a) in deter-

---

4. Behler points out that law enforcement officials seized only approximately 4.5 grams of methamphetamine at 20% purity. He contends that amount of methamphetamine would have placed him at a base offense level of 14. As explained before, the district court found that a preponder-

ance of the evidence demonstrated that Behler was responsible for a total of 399 grams of methamphetamine mixture or substance of 20–25% purity, which placed him at a base offense level of 30.

mining the amount of methamphetamine involved in the drug conspiracy. Section 6A1.3(a) allows the court to consider any evidence in its sentencing determination as long as it has "sufficient indicia of reliability to support its probable accuracy." *Candie,* 974 F.2d at 64 (quoting U.S.S.G. § 6A1.3). Behler contends the district court erred in relying on the testimony of Wiegert and Houston because their testimony did not have "sufficient indicia of reliability."

Behler first contends that the district court failed to make its own independent determination of the reliability of their testimony. He asserts that the district court adopted the jury's assessment of the testimony in spite of the fact that nothing in the jury's verdict indicates that it found the testimony of Wiegert or Houston to be reliable. Behler's argument finds no support in the record. The district court specifically stated at the sentencing hearing that it accepted their testimony. This statement demonstrates that the district court independently assessed the testimony and found that it contained sufficient indicia of reliability.

Behler also argues that even if the court independently assessed their testimony, it erred in finding the testimony to be reliable. We have noted that arguments about the reliability of a witness really "boil[ ] down to an attack on the credibility of that testimony" and "witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal." *Candie,* 974 F.2d at 64[5]. We find no reason to disturb the district court's finding.

### C.

■■■■■ Behler next argues that there was insufficient evidence to support the district court's imposition of both a three-level enhancement under U.S.S.G. § 3B1.1 for his role in the offense and a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction

of justice. The district court's factual findings relating to these enhancements are reviewed for clear error. *United States v. Johnston,* 973 F.2d 611, 613–14 (8th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1019, 122 L.Ed.2d 165 (1993) *and* — U.S. —, 113 S.Ct. 1377, 122 L.Ed.2d 753 (1993). We find no clear error as each of these findings is amply supported by the record. Behler's attempts to intimidate the witness Nora Houston (as found by both the magistrate judge and the district court) merit the obstruction of justice enhancement.

### D.

■■■■■ Behler's final argument is that the district court committed two violations of Federal Rule of Criminal Procedure 32. First, Behler contends that the district court erred by having an ex parte discussion in chambers with the probation officer during the sentencing hearing. Behler knew about the meeting but failed to object at the sentencing hearing and, thus, has waived any such issue (if one were to exist) on appeal. Second, Behler also complains that after he was sentenced, the district court filed the probation officer's sentencing recommendations under seal. We find no error in this procedure. *See* Fed.R.Crim.P. 32(c)(3)(A) (defendant and defendant's counsel not entitled to disclosure of probation officer's final recommendation as to sentence).

### VIII.

We affirm Behler's convictions, we vacate his sentences on Counts I, III, and IV, and we remand those counts for resentencing consistent with *United States v. Bell* and this opinion.[6] In all other respects, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, concurring specially.

I concur in my colleague's excellent and thorough opinion and write specially to note only my reservations about the discussion in

---

**5.** We remanded for resentencing on other grounds in *Candie,* 974 F.2d at 65.

**6.** We note that the district court grouped these counts for sentencing and imposed a 168–month concurrent sentence on each count. Count III (the telephone count) carries a statutory maximum of four years' (48 months') imprisonment.

21 U.S.C. § 843(c). While Counts I, III, and IV may be grouped for Sentencing Guidelines computation purposes (*see* U.S.S.G. § 3D1.2— § 3D1.5 (1987)), when the Guideline range for the group exceeds the statutory maximum for one of the counts within the group, that count can only be sentenced at its statutory maximum. *See* U.S.S.G. § 5G1.2(b); § 5G1.1(a) (1987).

part IV. I agree that in the present case the district court did not abuse its discretion in answering the jury's question in the way that it did. Behler did not argue that the district court's response misstated the law or was misleading to the jury. Instead, Behler argued the district court's response undermined the effectiveness of his theory of defense, which was essentially that the government failed to prove the existence of any agreement or understanding at all, much less one between Behler, McRea and others.

My reservation involves the significant difference between elements of an offense that are charged in the conjunctive and those charged in the disjunctive. An instruction that requires the jury to find in the conjunctive rather than in the disjunctive places a far heavier burden of persuasion and production upon the government. This is because, in order to find in the conjunctive, the jury must find that both elements exist, whereas finding in the disjunctive requires the jury to find that only one of two or more elements exists. Moreover, while there must be evidence to support both findings in the conjunctive, the evidence must support only one of two or more possible findings in the disjunctive and, absent a special verdict or special interrogatory, no one can say which finding the jury made to reach its verdict.