# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1481

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Roy Lee Russell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 13, 2000
Filed: November 28, 2000

_____

Before BOWMAN and BEAM, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Roy Lee Russell appeals his conviction for obstructing justice in violation of 18 U.S.C. § 1503(a), arguing that the evidence presented at trial was insufficient to sustain his conviction. He also challenges the sentence imposed by the District Court.[2] We

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

affirm, but remand for compliance with Federal Rule of Criminal Procedure 32(c)(1) (attachment of fact-findings made at sentencing to presentence investigation report).

I.

The Arkansas State Police hired Russell in 1997 to act as a confidential informant in an undercover drug operation dubbed "Operation Wholesale." Russell was paid by the state police and the FBI to identify drug dealers and make drug buys under the supervision of an Arkansas State Trooper. As part of this arrangement, Russell was expected to testify at the trials of those arrested for the undercover drug deals.

In the summer of 1998, a grand jury charged approximately forty-eight defendants identified in Operation Wholesale with distribution of cocaine and cocaine base. As trial preparation began, Russell had a falling-out with the FBI and the state police over the terms of payment for his continuing participation in these prosecutions.

In one of the first Operation Wholesale cases tried, Russell testified that he had purchased crack cocaine from the defendant, Steve Block, on the dates specified in the indictment. However, after Block's conviction Russell signed an affidavit stating that he had never purchased drugs from Block on any occasion.[3] This development spurred an investigation that revealed Russell had signed affidavits exonerating ten defendants charged in Operation Wholesale. Consequently, the United States Attorney dismissed pending indictments against fifteen defendants because Russell was the only person

---

[3]Block was tried twice; the first trial ended in a mistrial. After Block was retried and convicted, his attorney moved for a new trial based upon Russell's "exculpatory" affidavit.

who could identify the defendants as drug dealers.[4]  In addition to signing affidavits exonerating Block and other defendants, Russell later testified in federal court—directly contradicting his earlier testimony—that he had never purchased controlled substances from Block on any occasion.

Because of these events, Russell was charged with and convicted of obstruction of justice and perjury.  At his sentencing, Russell objected to multiple aspects of the presentence investigation report (PSR).  After a lengthy sentencing hearing, the District Court found that all but one of these objections lacked merit and sentenced Russell to concurrent terms of 110 months on the obstruction count and 60 months on the perjury count.  The court also ordered Russell to pay restitution to the FBI and the Arkansas State Police for the monies they paid to him for his services during Operation Wholesale.  Russell appeals.[5]

## II.

## A.

Russell advances two deficiencies in the evidence supporting his obstruction conviction as grounds for reversal.  First, he argues that the government has not established that he lied in the affidavits he signed for Operation Wholesale defendants. Second, Russell asserts that he lacked any intent to "interfer[e] with the due administration of justice," as required for an  obstruction conviction by United States v. Aguilar, 515 U.S. 593, 599 (1995).

---

[4]Subsequent to Russell's conviction, additional indictments against Operation Wholesale defendants were dismissed because no other witness could identify the defendants.

[5]In this appeal, Russell does not attack his perjury conviction.  His appeal is limited to attacks upon his conviction for obstruction of justice and his sentence.

In reviewing the sufficiency of the evidence in support of a criminal conviction we consider whether, in the light most favorable to the government, there is substantial evidence of the defendant's guilt to support the jury's verdict. See United States v. Slavens, 746 F.2d 1338, 1341 (8th Cir. 1984). Russell's indictment charged him with obstruction of justice under the "Omnibus Clause" of §1503. A conviction under this provision requires proof of a sufficient nexus between the defendant's actions and an intent to impede judicial proceedings. See Aguilar, 515 U.S. at 599. "In other words, the endeavor must have the '"natural and probable effect"' of interfering with the due administration of justice." Id. (quoting United States v. Wood, 6 F.3d 692, 695 (10th Cir. 1993)).

Russell argues that the government's evidence failed to show that he lied in the affidavits he signed exonerating ten of the defendants. Although Russell stated under oath that he never bought drugs from those defendants, the government presented much evidence contradicting Russell's story. Before any of the defendants were arrested, the government had Russell confirm the identities of the suspects by looking at photos of them and affirming that those suspects had sold him drugs. The Arkansas state trooper who worked with Russell on each transaction testified that each of the contested buys did in fact take place.

In addition, Russell's girlfriend testified that Russell claimed that the defendants for whom he signed affidavits were going to pay him for his help in getting them out of their drug charges. Two other witnesses testified that Russell never voiced any concerns about the guilt of those indicted and arrested through the operation, until disputes arose over his pay and his responsibility for paying income tax thereon. Although Russell's own testimony contradicts the evidence described, it was within the jury's province to credit the testimony of other witnesses over that of Russell. See DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 468 (8th Cir. 2000) ("Determining the credibility of a witness is the jury's province, whether the witness is lay or expert.").

Thus, the jury was free to determine Russell had lied, and there is substantial evidence supporting that view.

Turning to Russell's argument that he lacked the intent to influence a judicial proceeding, we find that the record contains substantial evidence of such an intent. Russell had prior experience as a confidential informant,[6] establishing a familiarity with his role as an informant and the process through which the pending cases would proceed. Three witnesses testified at trial that Russell expected some form of payment for assisting Operation Wholesale defendants in having their charges dismissed. Furthermore, the Arkansas state trooper assigned to Russell testified that after the affidavits surfaced Russell stated that some of the cases could be saved if the FBI could "get their money right." Multiple witnesses attested to Russell's anger at the prospect of having to pay taxes on his income from the state police and the FBI, as well as at the FBI's reduction of his compensation. Finally, three law enforcement officials who handled the operation testified that Russell claimed he would "get amnesia" and that the government would lose these cases without him. Russell's attempts to obtain payment for exonerating affidavits and his threats to sabotage the pending prosecutions demonstrate Russell's intent to obstruct justice. We thus conclude that there is substantial evidence that Russell had knowledge that the "natural and probable effect" of his actions would be to interfere with the administration of justice in these prosecutions.

Because the evidence is sufficient to support Russell's conviction for obstruction of justice, the conviction is sustained.

B.

---

[6]Russell acted as a confidential informant in a 1987 Arkansas State Police drug operation.

Russell's brief appears to challenge his sentence on two grounds.[7] First, he argues that the District Court erred in its guidelines application based on Federal Rule of Criminal Procedure 32(c)(1) and this court's decision in United States v. Candie, 974 F.2d 61 (8th Cir. 1992). Second, he asserts that the District Court misapplied the cross-reference provisions of United States Sentencing Guidelines §§ 2J1.2(c) and 2X3.1.

Russell attacks the sufficiency of the District Court's findings of controverted fact required by Rule 32(c)(1).[8] At sentencing, the government has the burden of proof on disputed facts, and generally must satisfy a preponderance of the evidence standard. See United States v. Simmons, 964 F.2d 763, 771 (8th Cir.), cert. denied, 506 U.S. 1011 (1992). We review a district court's findings of fact at sentencing for clear error, giving due deference to the court's opportunity to observe witnesses' credibility and to its application of the guidelines to the facts. See 18 U.S.C. § 3742(e) (1994).

Attacking the drug-quantity findings made at sentencing, Russell argues that our decision in Candie demonstrates the insufficiency of those findings. In Candie, the defendant appealed his guideline sentence on the ground that unreliable trial testimony from a confederate was used to establish the defendant's base offense level. The confederate was a convicted felon, and the defendant objected to the exclusive use of

---

[7]The identification and discussion in Russell's brief of these asserted errors lack coherence and clarity. We have attempted to identify and address the arguments Russell appears to have made.

[8]Rule 32(c)(1) requires that for each matter controverted at the sentencing hearing "the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons." Fed. R. Crim. P. 32(c)(1).

his testimony to establish the drug quantities used to calculate the defendant's sentence. At the sentencing hearing, no other drug-quantity evidence was presented, and the court concluded that it had "no alternative but to accept that evidence because [to assess some other amount] would be completely arbitrary and capricious without any evidence to support it whatsoever." Candie, 974 F.2d at 63. On appeal, we vacated the sentence and remanded for resentencing, on the basis that the district court's statement regarding its use of the allegedly unreliable testimony did not adequately explain why the court chose to credit that testimony. See id. at 65.

Russell's case is distinguishable from Candie. First, unlike the court in Candie, the District Court held an extensive sentencing hearing. The government presented testimony by an FBI agent regarding drug quantities associated with the Operation Wholesale cases. Russell called two chemists who testified regarding the weights of the drugs purchased by Russell in the undercover operation. At the conclusion of this testimony, in response to a defense objection to quantity determinations in the PSR, the court threw out the drug amounts associated with two cases, finding them too unreliable to include in calculating Russell's base offense level. The court then made its drug-quantity findings based on a preponderance of the evidence that the court considered to be reliable. We conclude the court adequately complied with Rule 32(c)(1) regarding findings of controverted material fact as related to drug quantity.

Russell made other objections to the PSR, including to the suggested amount of restitution, the assertion that he testified falsely, and the assertion that his actions caused the dismissal of fifteen pending cases. After a thorough review of the evidence presented at trial and at sentencing, we find that the evidence supports these statements in the PSR. Furthermore, the court adequately addressed these objections at sentencing. See United States v. Mills, 987 F.2d 1311, 1316-17 (8th Cir.) (holding that Rule 32(c)(1) is satisfied where a sentencing judge, who also presides over a defendant's trial, makes findings based on evidence presented at trial even though no additional evidence is introduced at sentencing), cert. denied, 510 U.S. 953 (1993); cf.

-7-

Smith v. United States, 206 F.3d 812, 813 (8th Cir.) (per curiam) (holding that a sentencing judge may consider "reliable evidence from a codefendant's trial presided over by the sentencing judge"), cert. denied, No. 00-6030, 2000 WL 1337176 (Oct. 16, 2000). The evidence met the preponderance standard on these matters. Thus, we find no sentencing error on any of these grounds.

Next, Russell objects that no copy of the court's findings of controverted fact was attached to the PSR as required under Rule 32(c)(1). We cannot determine from the record whether this requirement has been fulfilled. Failure to attach the findings is not, however, a basis for resentencing. See Poor Thunder v. United States, 810 F.2d 817, 826 (8th Cir. 1987) (remanding for attachment of findings to PSR, but not for resentencing). Thus, we remand to the District Court solely to provide the opportunity, if the District Court has not done so already, to comply with this provision of Rule 32.

Finally, Russell objects to the District Court's application of United States Sentencing Guidelines (U.S.S.G.) § 2J1.2, the guideline for obstruction of justice under 18 U.S.C. § 1503. Subsection (c) of § 2J1.2 required the court to use the provisions of U.S.S.G. § 2X3.1, the accessory-after-the-fact guideline, to determine Russell's base offense level. Russell's objection misunderstands the function of the guideline cross reference found in § 2J1.2(c).

Section 2J1.2(a) establishes a base offense level of 12 for obstruction convictions under § 1503. Subsections (b) and (c) set out offense characteristics that enhance the base offense level. Specifically, subsection (c) provides that "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." U.S. Sentencing Guidelines Manual § 2J1.2(c) (1998). Subsection (c) controls Russell's base offense level because his actions involved the obstruction of an investigation or prosecution of a criminal offense,

and because the calculation using § 2X3.1 resulted in an offense level greater than the highest possible level under § 2J1.2(a) and (b).

Section 2X3.1 states that the defendant's base offense level shall be six levels lower "than the offense level for the underlying offense." U.S. Sentencing Guidelines Manual § 2X3.1. In Russell's case, the District Court calculated Russell's base offense level by using the dismissed drug charges as the applicable underlying offenses, making drug-quantity findings, and then referring to the drug-quantity table to establish the base offense level. See U.S. Sentencing Guidelines Manual § 2D1.1(c) (drug-quantity table). This calculation placed Russell at level 34, from which the District Court subtracted six levels to arrive at Russell's final base offense level of 28.

Russell contends that the District Court should not have applied § 2X3.1 at all, arguing that use of this guideline as a cross reference first requires that the government prove facts sufficient to establish Russell's guilt as an "accessory after the fact" in the drug crimes used to calculate his sentence. While § 2X3.1 ordinarily applies to convictions for acting as an accessory after the fact, see generally U.S. Sentencing Guidelines Manual § 2X3.1 cmt. statutory provisions (listing 18 U.S.C. §§ 3, 757, 1071, 1072), it also serves as a tool for calculating the base offense level for particularly serious obstruction offenses. Russell's argument misunderstands the relationship between § 2J1.2(c) and § 2X3.1 in this context. Where the defendant has obstructed the investigation or prosecution of a criminal offense, the government need not charge or convict the defendant as an accessory after the fact. See U.S. Sentencing Guidelines Manual § 2J1.2 cmt. background ("Use of this cross reference [to the accessory-after-the-fact sentencing guideline] will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person."); United States v. McQueen, 86 F.3d 180, 182 (11th Cir. 1996) ("The language of [§ 2J1.2(c)] is mandatory when the offense involves 'obstructing the investigation or prosecution of a criminal offense' without any qualification and without regard to whether defendant

or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all."). The guidelines base Russell's sentence upon the acts he took in "obstructing the investigation or prosecution of a criminal offense," and not upon criminal liability for acting as an accessory after the fact to any drug offense. U.S. Sentencing Guidelines Manual § 2J1.2(c)(1). The cross reference merely provides flexibility within the provisions of § 2J1.2 so that the guideline may apply to both less and more serious forms of obstruction. We find that the District Court properly applied the cross reference in determining Russell's sentence.

In sum, we find that none of Russell's sentencing issues has merit. We remand to the District Court solely for the purpose of attaching to the PSR, if the District Court has not done so already, a copy of its findings on the facts controverted at sentencing, so that the findings may accompany the PSR to the Bureau of Prisons in accordance with Federal Rule of Criminal Procedure 32(c)(1).

C.

As mentioned above, the District Court made findings concerning the drug quantities used to calculate Russell's sentence, using the preponderance of the evidence standard that this Court long has approved. During oral argument, counsel for Russell called the Court's attention to the possible application of the Supreme Court's decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000).

The Supreme Court held in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63 (emphasis added). We conclude that Apprendi has no application to Russell's case. As we observed in United States v. Aguayo-Delgado, "[t]he rule of Apprendi only applies where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict."

220 F.3d 926, 933 (8th Cir. 2000). In Russell's case, the obstruction statute imposes a ten-year statutory maximum sentence, and the perjury statute imposes a five-year statutory maximum sentence. The District Court sentenced Russell to concurrent sentences at or below these maximums.[9] Thus, Russell's appeal does not raise a meritorious <u>Apprendi</u> issue, as his sentence was not "beyond the prescribed statutory maximum" on either count. <u>Apprendi</u>, 120 S. Ct. at 2362-63.

### III.

Russell's conviction and sentence are affirmed. The case is remanded to the District Court for compliance, if such compliance has not already been accomplished, with Federal Rule of Criminal Procedure 32(c)(1) (requiring the attachment of findings of fact to PSR).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]Russell received concurrent sentences of nine years and two months on the obstruction count and five years on the perjury count.