**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos Ernesto ARIAS, aka Carlos Queida, Defendant–Appellant.**

**United States of America, Plaintiff–Appellant,**

v.

**Carlos Ernesto Arias, aka Carlos Queida, Defendant–Appellee.**

**Nos. 00–50318, 00–50357.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 2001

Filed June 12, 2001

Jack M. Earley, Costa Mesa, California, for the defendant-appellant-cross-appellee.

Elana S. Artson, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee-cross-appellant.

Before: RYMER, HAWKINS and GOULD, Circuit Judges.

RYMER, Circuit Judge:

Carlos Arias was convicted of witness intimidation in violation of 18 U.S.C. § 1512(b), but acquitted of conspiracy to distribute and to possess with intent to distribute 5 kilograms of cocaine, possession with intent to distribute 4 kilograms of cocaine, and use of a handgun in relation to a drug trafficking crime. Arias appeals his conviction, which we affirm, and the government cross-appeals from sentence on the witness intimidation count.

When a defendant is convicted of tampering with a witness, the offense level for

obstruction is driven by the offense level of the crime whose prosecution was obstructed. The Sentencing Guidelines accomplish this by a cross reference from USSG § 2J1.2, the obstruction guideline, to § 2X3.1.[1] USSG § 2J1.2(c)(1) (1998). Section 2X3.1 must be applied when the resulting offense level is higher. The idea is for the penalty for obstruction to reflect the seriousness of the underlying crime being prosecuted. Here, the district court refused to apply the cross-reference because in its view, the underlying offense(s) had not been proved by at least a preponderance of the evidence. However, the cross reference applies without regard to whether the underlying offense is provable. In some cases, the court may have to determine the offense, or offenses, with respect to which the obstruction occurred. *This* determination is a factual one that the sentencing judge will resolve by a preponderance of the evidence. If, as may also sometimes happen, there is more than one offense with respect to which obstruction occurred, the most serious offense is to be used. USSG § 1B1.5, comment. (n.3). As the district court erred by disregarding altogether underlying offenses that had not been proved to its satisfaction, we vacate the sentence and remand for resentencing.

## I

Co-conspirators Elizabeth Trujillo and Alfred Lewis White were involved in a drug ring based in Orange County, California. Trujillo told the government that she assisted White in a sale of five kilograms of cocaine to a man named Frias. Roughly two kilograms were actually coffee, and when Frias sought to make good on the deal Trujillo turned to Arias, her boyfriend at the time, to help get cocaine.

Trujillo, Arias and White arranged for two drug dealers, Daniel Garcia and Fernando Chino Ceballas, to bring two kilograms of cocaine to Arias's garage. The plan was to rob them of the drugs and then kill them. Trujillo told the government that Arias was the one who stabbed them to death. She called the dealers, directed them to the garage, and helped set fire to their car to dispose of the evidence.

Trujillo, Arias and White were all arrested. Trujillo decided to cooperate and pled guilty to conspiracy to distribute cocaine and to being an accessory after the fact to murder.

Meanwhile Trujillo and Arias were housed at the Metropolitan Detention Center (MDC) in Los Angeles pending trial. Prisoners on certain floors at MDC can speak to each other through air vents, and through the toilet pipes when the water is removed. The air vents are less private; the pipes allow private communication but only between prisoners sharing plumbing in a vertical line. MDC authorities are aware of this cell phone system.

There was a separation order between Arias and Trujillo, but it turned out that Trujillo was housed in the women's unit referred to as 9–North and Arias was housed in the Special Housing Unit (SHU) on 8–North, directly underneath Trujillo. On December 3, 1998, a male identifying himself as "Chuko" spoke to Trujillo through the air vent and told her to "Take the water out, or I'm going to put all this business on the vent." Trujillo understood that the speaker would talk about her being a cooperator on the more public vent system if she didn't enable the pipes. Fearing that other prisoners would target her if they learned this, she removed the water.

1. Section 2X3.1 is the "accessory after the fact" guideline, even though literally being an accessory after the fact has nothing to do with the calculus for obstruction of justice.

Once she removed the water, the first thing the speaker said was that he was sorry her mother had recently died. At that point, she recognized the speaker to be Carlos Arias. Arias then asked her if she knew who he was. She replied "Yeah, it's Carlos," and he laughed. Arias then said "I don't even know why I want to talk to you. You got me in here and you ruined my life." She kept quiet. Arias told her: "I want you to tell them it's a lie. I want you to call my attorney and tell him that you lied." He then suddenly said "So who lives in Riverside? Who lives in Anaheim?"

That scared Trujillo, because her children live in Riverside and Anaheim. Arias told her that she was stupid, they didn't have anything on her, and that she had opened her mouth and let it all out. She told him that the government had already found the blood in the garage, and he told her it would have matched any Hispanic male. Although Trujillo characterized this conversation as "very friendly," she explained that he wasn't friendly when he referred to her children. The conversation ended when Trujillo, worried that approaching officers would hear them talking, ended the conversation by flushing the toilet.

The two had another conversation the next day. Arias told Trujillo she should call Arias's attorney and tell him that she lied. Arias told her that she should not testify, that she should change her plea to not guilty and they didn't have anything on her. At some point in this conversation she told Arias that she was considering killing herself before testifying, and he told her not to do that, but just to tell

them that she lied. Arias became suspicious she was recording him, so he flushed the toilet and ended the conversation. Trujillo characterized this conversation as not friendly; Arias was yelling at her.

For some reason Arias was moved out of SHU but on December 9, asked Lieutenant Douglas Bell, a correctional supervisor at MDC, to be moved back. During their conversation, Arias explained that he wanted back in SHU because of a woman on 9–North. Arias referred to her as "the bitch" and said "that he was charged with these two homicides and that if he could get up there to talk to her that basically this inmate that he referred to as Elizabeth was the only thing that could convict him, that her testimony was all the U.S. Attorney had." Arias also indicated that this was one of the reasons why he had to go to 8–North, to convince her not to testify, and that "if she did testify, . . . he said I'll have her kids, no more kids." [2]

Arias was originally indicted on drug and gun charges; a second superceding indictment added a charge of witness intimidation with intent to prevent testimony in an official proceeding in violation of 18 U.S.C. § 1512(b)(1). He and White were tried together. The jury convicted Arias on the witness tampering charge, but was unable to reach a verdict on the remaining counts. He was retried, and acquitted, on the drug and weapons charges.

At sentencing, the district court arrived at an offense level of 20 by applying USSG § 2J1.2 (obstruction of justice).[3] It denied both the government's request for an upward departure and Arias's request for

---

**2.** Arias was put in a cell under the television room of 9–North, without vents or toilet pipes for communication.

**3.** Under § 2J1.2, the base offense level of 12 is increased by 8 levels when "the offense

involved . . . threatening to cause physical injury to a person . . . in order to obstruct the administration of justice." USSG § 2J1.2(a) & (b) (1998). The district court found that this special circumstance applied.

downward departures. The court refused to follow the Presentence Report's recommendation to apply the cross reference in § 2J1.2(c)(1) to § 2X3.1 (accessory after the fact), because the government had not proved the underlying offenses by a preponderance of the evidence. Based on a category III criminal history and an offense level of 20, the guideline range was 41–51 months. The court sentenced Arias to 41 months in custody and three years' supervised release.

Both parties appealed.

## II

Turning first to Arias's appeal, Arias argues that there was insufficient evidence to convict him of threatening Trujillo. He maintains that he merely told Trujillo to tell the truth,[4] that he could not have been threatening her because he lacked the ability to carry anything out while at MDC, and that he did not seek both to influence *and* prevent her testimony as the indictment charged. Further, Arias points out that he told Trujillo not to commit suicide, which he suggests he would not have done had he been trying to prevent her from testifying.

■ We disagree that no rational juror could have found Arias guilty beyond a reasonable doubt. Viewing the evidence in the light most favorable to the government, as we must[5]: Arias threatened harm to Trujillo's children. Even though the discussion was "friendly," Trujillo was frightened. Whether or not credible in other respects, her testimony with respect to the threat is corroborated by Bell's testimony about Arias's conversation with him. The jury could discredit evidence that Arias told Trujillo to tell the truth given the fact that he also told her to say that she had lied before. Likewise, it could discount evidence that Arias discouraged Trujillo from suicide; the jury could reasonably conclude that his comment failed to overcome his threats against her children, and that recantation was Arias's primary objective. Nor is there incongruity between Trujillo's perception of a threat and Arias's inability to act on it; he could have had someone else do so.

■ Finally, it is not necessary for conviction that Arias influenced as well as prevented Trujillo's testimony. He relies on the charge in the indictment, that he attempted to and did intimidate Trujillo "with intent to influence and prevent" her testimony in an official proceeding, contending that this required the government to prove that he intended to influence *and* prevent Trujillo's testimony—which, of course, he did not do. However, § 1512(b) criminalizes threats intended to "influence, delay, *or* prevent testimony."[6] When, as here, the statute speaks disjunctively, the conjunctive is not required even if the

---

**4.** In this connection, Arias points to 18 U.S.C. § 1512(d), which permits an affirmative defense by which a defendant can show by a preponderance of the evidence "that the conduct consisted solely of lawful conduct and *that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully."* 18 U.S.C. § 1512(d). This section was apparently intended to exempt judicial officers who lawfully remind witnesses or defendants of their oath to give true testimony, although the *statutory* language itself is not so limited. *See U.S. v. Johnson,* 968

F.2d 208, 213 (2d Cir.1992) (quoting legislative history).

**5.** *United States v. Aceves–Rosales,* 832 F.2d 1155, 1157 (9th Cir.1987).

**6.** 18 U.S.C. § 1512(b) provides:

Whoever knowingly ... threatens ... another person, with intent ... to influence, delay, or prevent testimony of any person in an official proceeding ... shall be fined under this title or imprisoned not more than ten years, or both.

offense is charged conjunctively in the indictment. *United States v. Bettencourt*, 614 F.2d 214, 219 (9th Cir.1980).

Accordingly, we affirm Arias's conviction.

## III

The government asserts in its cross-appeal that a sufficiency of the evidence analysis on the underlying offense is inapposite to the applicability of USSG § 2J1.2(c)(1)'s cross reference to § 2X3.1. Arias essentially concedes (as he did in the district court) that the cross reference is mandatory when the offense involves obstructing the prosecution of a criminal offense. It clearly is, as we shall explain. Regardless, Arias urges us to affirm on other grounds, primarily that the court found there was no prosecution being obstructed whose offense level was greater than that provided in § 2J1.2(c)(1). Alternatively, he suggests, the court could (and should) have reached the same sentence by applying the cross reference but then departing downward. Whether or not this could have been done, it affords no basis for affirming because the court expressly refused a downward departure. Nor can we possibly affirm on the footing that the court may implicitly have found obstruction of some other offense with a lower offense level than determined under § 2J1.2. There is no support for this in the record, but more importantly, Arias must be resentenced without the drug and gun offenses being disregarded.

The district court was apparently concerned about using acquitted conduct and thought that for the cross reference to apply, there had to be clear and convincing evidence, or at least proof by a preponderance of the evidence, that the defendant engaged in the underlying crimes charged in the indictment. Perhaps the concern stemmed from *United States v. Hopper*,

177 F.3d 824 (9th Cir.1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1179, 145 L.Ed.2d 1086 (2000), where we noted that acquitted or uncharged conduct may be used to enhance a guidelines sentence so long as the government proves the underlying conduct by a preponderance of the evidence or, in exceptional cases where the sentencing factor has "an extremely disproportionate effect on the sentence relative to the offense of conviction," by clear and convincing evidence. *Id.* at 833. However, this is not a *Hopper* case. Here, Arias is being sentenced for *convicted* conduct—obstructing the prosecution of a criminal offense. The issue of uncharged or acquitted conduct simply does not arise.

The guidelines framework is straightforward. There is no dispute that § 2J1.2 applies to Arias's conviction for obstruction of justice. It provides a base offense level of 12, to be increased by specific offense characteristics (in this case, an eight level increase for threatening to cause physical injury), and a cross-reference to § 2X3.1 if the defendant obstructs prosecution of a criminal offense and if applying § 2X3.1 increases the sentence. The Commentary indicates that the intent of the cross reference is to increase the penalty for obstruction of more serious offenses:

> The specific offense characteristics reflect the more serious forms of obstruction. Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person.

USSG § 2J1.2, comment. (backg'd.). In turn, § 2X3.1 establishes a base offense level of 6 levels lower than the offense level for the underlying offense, but not less than 4 or more than 30. Its application with respect to the drug and/or gun offenses in this case would yield an offense level greater than under the obstruction guideline.[7]

We have not previously considered whether the underlying offense whose prosecution is obstructed must be proved by a preponderance of the evidence (or any other measure) before applying § 2J1.2(c)(1). But we have recognized in the case of perjury, which is treated similarly to obstruction of justice,[8] that the conduct "is itself more gravely wrongful if the proceeding in which it occurred had greater stakes." *United States v. Keys,* 67 F.3d 801, 812–13 (9th Cir.1995) (Part D), *vacated, but later reinstated in* 153 F.3d 925 (9th Cir.1998) (reinstating Part D of 67 F.3d 801). From this it follows that proof of the underlying offense is not material, because the point of the cross reference is to punish more severely (and to provide a greater disincentive for) perjury in, and obstruction of, prosecutions with respect to more serious crimes.

Other circuits have addressed the issue directly, and agree that the cross reference in § 2J1.2(c)(1) must be applied without regard to the defendant's guilt on the underlying offenses. *See, e.g., United States v. McQueen,* 86 F.3d 180 (11th Cir. 1996); *United States v. Brenson,* 104 F.3d 1267 (11th Cir.1997); *United States v. Dickerson,* 114 F.3d 464 (4th Cir.1997); *United States v. Russell,* 234 F.3d 404 (8th Cir.2000). No court of which we are aware would permit inquiry into the sufficiency of the evidence on the underlying offense whose prosecution was obstructed.

*McQueen* is the leading case. There, the defendant was indicted and tried for seven counts of money laundering and one count of witness tampering. Like Arias, McQueen was acquitted of everything but witness tampering. At sentencing, application of § 2J1.2 produced a base level of 12 while applying the cross reference to § 2X3.1 yielded a base level of 17, with the result that the sentencing range roughly doubled. The district court refused to apply the cross reference because the jury had acquitted McQueen of the underlying offense. Noting that the language of § 2J1.2(c)(1) does not support such an analysis, the Court of Appeals for the Eleventh Circuit held:

> The language of the cross-referencing provision is mandatory when the offense involves 'obstructing the investigation or prosecution of a criminal offense' without any qualification and without regard to whether the defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all.

*McQueen,* 86 F.3d at 182–83. As the same court explained in *Brenson,* "the use of § 2X3.1 is intended not to treat the defendant as having committed the underlying offense, but to weigh the severity of one's actions in obstructing justice based on the severity of the underlying offense that was the subject of the judicial proceeding sought to be obstructed, impeded or influenced." 104 F.3d at 1285. In other

---

**7.** Arias questions the Presentence Report's use of five kilograms of cocaine for calculating the offense level under § 2X3.2, as well as the addition of points on account of a gun. We leave these issues to the district court on remand. However, for purposes of the cross-appeal, there is no doubt that application of § 2X3.1 is triggered.

**8.** USSG § 2J1.3, comment. (backg'd); *see United States v. Washington,* 66 F.3d 1101, 1104 n. 3 (9th Cir.1995) (noting parallelism).

words, using the cross reference does not equate to "a sentence for the underlying offense but [is] merely a measure or point of reference for the severity of offenses involving the administration of justice." *Id.* (quotation omitted).

In *Russell,* the defendant was a confidential informant whose testimony affected the prosecution of some 48 defendants on drug charges. The government discovered that Russell had signed exculpatory affidavits for ten defendants, who were to pay Russell for the favor. It dismissed pending indictments against fifteen defendants as to whom Russell was the only witness. Russell was then indicted and convicted of obstruction of justice and perjury. At sentencing, the district court used the dismissed drug charges as the underlying offense, found the quantity of drugs involved, and then applied the cross reference in § 2J1.2(c)(1) to determine the offense level in accordance with § 2X3.1. Russell argued that the cross reference was improper because he was not actually an accessory after the fact to the drug crimes. The court held that this was unnecessary, relying on *McQueen* and reasoning that "[t]he cross reference merely provides flexibility within the provisions of § 2J1.2 so that the guideline may apply to both less and more serious forms of obstruction." *Russell,* 234 F.3d at 410.

■ Arias fails to argue why we should not follow *McQueen.* However, he does contend that the Fourth Circuit's decision in *Dickerson* authorizes a district court to assess the reliability of the information supporting the underlying offense. We disagree. In *Dickerson,* the defendant was convicted of giving perjurious testimony at someone else's trial for assault resulting in bodily injury and assault with intent to commit murder. That person was convicted of assault resulting in bodily injury, but acquitted of the more serious offense. The district court refused to apply the cross reference in § 2J1.3(c)(1) on the ground that Dickerson was not actually an accessory. The Fourth Circuit reversed, making it clear that the district court *must* apply the cross reference. This left the question: with respect to which criminal offense (assault, assault to commit murder, or both) should Dickerson be sentenced "as an accessory." The government sought a ruling that whenever a sentencing court finds the § 2J1.3(c)(1) cross reference applicable, it must sentence the defendant as an accessory to the most serious underlying offense that was *charged.* The court refused to go so far, out of concern that the prosecutor's charging decision should not invariably control. Rather, it held that a district court should make a finding on what constitutes the underlying offense, and that this determination, like any other factual finding, must be supported by the evidence. *Dickerson,* 114 F.3d at 469. Thus, *Dickerson* indicates that when there is more than one possible underlying offense, it is up to the sentencing court to determine with respect to which crimes being prosecuted the obstructive conduct occurred. The standard for *this* determination would be the preponderance of the evidence. We agree.[9] Beyond this, however, nothing in *Dickerson* suggests that applicability of the cross reference depends in any way on a deter-

---

9. This is consistent with how we have approached the same problem in the context of perjury. *See United States v. Leon–Reyes,* 177 F.3d 816, 823–24 (9th Cir.1999) (affirming district court's determination that the defendant's perjury "was only in respect to" money laundering charges and did not apply to drug trafficking charges); *United States v. Rude,* 88 F.3d 1538, 1543 (9th Cir.1996) (affirming district court's application of cross-reference to § 2X3.1 in § 2J1.3(c) because the court had made a finding that defendant committed perjury "in respect to" a particular criminal offense).

mination that the underlying offense occurred as charged. To the contrary, the court emphasized that the "underlying offense" does *not* need to be an offense of conviction; otherwise "perjurers would be able to benefit from perjury that successfully persuaded" a jury not to convict. *Id.* at 468.

█ Based on the plain language of § 2J1.2(c)(1), our previous treatment of the perjury guideline, and the persuasive analyses of our colleagues in other circuits, we conclude that § 2J1.2(c)(1) requires cross referencing without regard to whether the underlying offense whose prosecution was obstructed was or is provable. Therefore on remand, the district court shall use the provisions of § 2X3.1 to calculate Arias's offense level for obstructing the prosecution of a criminal offense, if the resulting offense level for the underlying offense is greater than for simply obstructing justice. There is no question that Arias obstructed justice; the only possible question is with respect to the prosecution of which offense or offenses. If in genuine dispute, the court should determine which offense or offenses were subject to the obstructed prosecution. This is a factual determination that the court may resolve by a preponderance of the evidence, but the determination goes to nexus only. If Arias obstructed the prosecution of more than one offense, then § 1B1.5 requires the court to use the offense that results in the greatest offense level.

## Conclusion

There was ample evidence to support Arias's conviction for witness tampering. However, his sentence must be vacated and remanded for the court to apply § 2J1.2(c)(1) without regard to whether the underlying offense or offenses whose prosecution was obstructed were proved or are capable of being proved.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.