RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 16-5701

*v.*

WILLIE MARSHAY GREER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:14-cr-00103-1—Curtis L. Collier, Chief District Judge.

Argued: June 21, 2017

Decided and Filed: October 3, 2017

Before: KEITH, BATCHELDER, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Christopher C. Wang, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Christopher C. Wang, Tovah R. Calderon, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

ALICE M. BATCHELDER, Circuit Judge. In this appeal from his criminal conviction for lying to an investigator, the defendant argues that the district court erred in calculating his

sentence by improperly applying a cross-reference to the Accessory After the Fact provision, USSG § 2X3.1, by relying on unproven factual allegations, and by denying him two requested downward departures. Finding no merit to any of these claims, we AFFIRM.

**I.**

Willie Greer was a Hamilton County (Tenn.) Deputy Sheriff. In a late-night traffic stop, he pulled over a female driver who had been drinking, had no driver's license, and had an outstanding arrest warrant. Greer ran her license but did not arrest her. Instead, he had her drive to a secluded location where he had her perform oral sex on him. After Greer ejaculated he gave the woman a fast-food cup, presumably to spit into, and allowed her to drive away.

Later that day, the woman filed charges with the Sheriff's Department, alleging that an officer had sexually assaulted her. A detective interviewed Greer that same day. Greer knew the woman had reported a sexual assault, that he was the suspect in that assault, and that the investigation could lead to criminal charges. And Greer lied to the detective. Greer said that he had run the woman's license plate but had no personal interaction with her, and could not even identify her. In truth, Greer had initiated a traffic stop and had interacted with her plenty.

Later during the same interview, Greer made up a new version of events. He said that he had not activated his police lights or detained her but, rather, she had approached him with the sexual proposition and that he had begun but had discontinued the act. Greer said he had been masturbating before she approached him and had ejaculated into the fast-food cup. But in truth, as Greer eventually admitted, he had activated his police lights to initiate the stop, had approached and detained the woman, and had "had [her] perform oral sex on him"; she had not sexually propositioned Greer, though whether he had been masturbating was not resolved. R. 24 at 3, ¶ 4 (Plea Agreement, admitted facts). Greer acknowledged that investigators recovered his semen from the woman's clothing and his DNA from the fast-food cup that he had given her.

The county prosecutor charged Greer with aggravated rape and official misconduct under state law, but dismissed those charges following a federal indictment for aggravated sexual abuse, witness tampering (i.e., making false statements to the detective), and possession of a gun during a crime of violence. Eventually the parties entered a plea agreement in which Greer

admitted the foregoing facts and pleaded guilty to witness tampering in violation of 18 U.S.C. § 1512(b)(3), in exchange for the federal prosecutor's dismissing the other two charges.

The presentence report (PSR) presented the relevant Sentencing Guidelines and the associated advisory guidelines calculations as follows:

> **Base Offense Level:** The guideline for 18 U.S.C. § 1512(b)(3) offenses is found in USSG § 2J1.2 of the guidelines. That section provides that an offense involving witness tampering (providing false information) has a base offense level of 14. USSG § 2J1.2(a).
>
> However, USSG § 2J1.2(c) provides for a Cross Reference to USSG § 2X3.1, Accessory After the Fact, in respect to the criminal offense under investigation. In this case, the criminal offense under investigation was a Civil Rights Violation (USSG § 2H1.1).
>
> USSG § 2H1.1(a)(1) establishes the base offense level to be the offense level from the guideline applicable to any underlying offense. In this case, the underlying offense of the civil rights violation being investigated was aggravated rape. The base offense level as determined under USSG § 2A3.1(a)(2) is 30.
>
> USSG § 2X3.1(a)(1) provides that the base offense level should be 6 levels lower than the offense level for the underlying offense, 30 minus 6 establishes a base offense level of 24.
>
> **Specific Offense Characteristics:** After the establishment of the base offense level pursuant to USSG § 2X3.1, the Special Offense Characteristic at USSG § 2H1.1(b)(1) is applied if the defendant was a public official at the time of the offense, or the offense was committed under the color of law. +6

PSR at ¶¶ 21-22. After subtracting three levels for acceptance of responsibility, the PSR's Total Offense Level was 27 (i.e., 24 + 6 - 3), which, coupling this with a criminal history category of I (score of zero), resulted in an advisory range of 70 to 87 months in prison. PSR at ¶ 55.

At the sentencing hearing, Greer objected to the cross reference to USSG § 2X3.1 on the basis that USSG § 2J1.2(c) should not apply because its commentary note says:

> Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant *has committed* or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense *was committed* by the defendant or another person.

USSG § 2J1.2 cmt. (emphasis added).  Relying on this language, Greer pointed out that there had been no prosecution or conviction on the underlying offense (rape), and argued that there was not even sufficient evidence that it had been "committed."  He said the encounter was merely an inappropriate but consensual sexual rendezvous.  The district court disagreed:

The Court:    But there's no dispute that this woman did come in, she did make a complaint that there had been a sexual assault committed against her; there is no dispute about that, is there?

Greer's Atty:  There is no dispute that that allegation was made, that's correct.

The Court:    And there is no dispute that that is in fact what was under investigation.

Greer's Atty:  Yes, Your Honor.

The Court:    Okay.  The Court having considered the arguments of counsel [and] . . . *United States vs. Kimble*, [305 F.3d 480 (6th Cir. 2002)], concludes that the presentence report is correct in using the cross references, that the cross referencing is not only supported by the guidelines but it is actually required under the guidelines.  So the Court will deny the defendant's objection to the presentence report based upon the cross references.

R. 53 at 12:5-20 (sentencing transcript).

Greer also moved for two downward departures.  First, he claimed that this was "aberrant behavior" by him, warranting departure under USSG § 5K2.20, but the district court denied that claim on the basis that Greer, being a trained police officer, was particularly aware of the consequences of lying to an investigator (and of having sex with the possibly intoxicated subject of a late-night traffic stop, possibly through coercion or extortion).  Greer also claimed, vaguely, that the woman's alleged misconduct (i.e., her falsely claiming that the sex was rape[1]), warranted a departure under USSG § 5K2.10, but the district court rejected that claim as well.

The district court agreed with the PSR's advisory range of 70 to 87 months, considered the § 3553 factors, sentenced Greer to a below-guidelines sentence of 60 months, and thoroughly explained the reasons for its sentence.  Greer moved for reconsideration, arguing that the

---

[1]It is noteworthy that the record contains no evidence or indication that the prosecutor ever charged the woman with filing a false police report; nor does Greer make any such assertion here.  Nor is there is anything in the record or Greer's briefing to indicate that Greer ever filed a civil suit against her for a false accusation.

sentence was too long because a lengthy prison sentence does not deter crime and consensual sex is not a serious crime.  The district court rejected the arguments and denied the motion.

## II.

### A.

We review de novo the district court's interpretation and legal application of the Guidelines.  *United States v. Schock*, 862 F.3d 563, 566-67 (6th Cir. 2017).  Here the district court interpreted USSG § 2J1.2(c) as requiring that it apply a cross reference to USSG § 2X3.1, Accessory After the Fact, for an investigation into an underlying criminal offense of aggravated rape, resulting in a base offense level of 24 per USSG §§ 2A3.1(a)(2) and 2X3.1(a)(1).  The court relied on *United States v. Kimble*, 305 F.3d 480, 485 (6th Cir. 2002), which holds that "[i]t is not necessary for the government to prove facts sufficient to establish a defendant's guilt as an 'Accessory After the Fact' in order to impose a sentence under [USSG] § 2X3.1."

Greer claims that the district court erred by applying USSG § 2X3.1 because the commentary to USSG § 2J1.2 presumes that an underlying offense was *actually committed*, not merely investigated,[2] meaning—in Greer's view—that the cross reference applies only if the prosecutor can prove by at least a preponderance of the evidence that the underlying crime actually occurred.[3]  Greer also points to the commentary to USSG § 2X3.1 as further support for this view, because it defines "underlying offense" as "the offense as to which the defendant *is convicted* of being an accessory, or . . .  the offense the defendant *is convicted of* having

---

[2]USSG § 2J1.2(c)(1) says: "If the [obstruction of justice] offense [under consideration] involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above."

The Commentary to USSG § 2J1.2 says in pertinent part:

"The specific offense characteristics reflect the more serious forms of obstruction.  Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant *has committed* or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided.  Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense *was committed* by the defendant or another person."

USSG § 2J1.2 cmt. (final paragraph) (emphasis added).

[3]Greer treats this as being (or being equivalent to) "acquitted conduct."  *See United States v. White*, 551 F.3d 381, 385-86 (6th Cir. 2008) (acquitted conduct "must be shown by a preponderance of the evidence").

materially supported after its commission" (emphasis added).[4]  Finally, Greer relies on language from *United States v. Shabazz*, 263 F.3d 603, 610 (6th Cir. 2001), which says: "the definition of 'underlying offense' in section 2X3.1 specifically directs the use of the offense level of the underlying crime of *conviction*, not all offenses for which a principal stood trial."  And *Shabazz* repeats that assertion in a footnote to that statement, which says, in pertinent part:

> [S]ection 2X3.1's definition of 'underlying offense' does not by its terms encompass charges that did not result in convictions.  Therefore, except to the extent that the charges on which [the defendant] was acquitted might fall within the scope of relevant conduct, they have no bearing on proper application of the Obstruction of Justice guideline in Shabazz's case.

*Id*. at 610 n.3; *see also id.* at 610 (repeating that § 2X3.1's definition of "underlying offense" does not "encompass all charges for which the government prosecuted [that defendant], [but] just those on which it obtained convictions").  Greer argues that, because the State did not prosecute or convict him of the underlying offense (rape), *Shabazz* bars the application of USSG § 2X3.1 and the district court's reliance on *Kimble* was misplaced, asserting that *Kimble* has been undermined by *United States v. Booker*, 543 U.S. 220 (2005), is dicta given that there *was* a conviction in *Kimble*, and most importantly, actually holds only that the prosecutor need not prove conclusively that the defendant obstructed justice.  Considering the relevant language in *Kimble*, however, we reject the contentions that *Booker* undermines it or that it is dicta.

The State and district court read *Kimble* as holding that it is the crime investigated (and thus the scope of investigation obstructed) that controls, and that the prosecutor need neither obtain a conviction on the underlying offense nor even produce facts in support of it:

---

[4]The Commentary to USSG § 2X3.1 says in pertinent part:

"For purposes of this guideline, 'underlying offense' means the offense as to which the defendant *is convicted* of being an accessory, or in the case of a violation of 18 U.S.C. § 2339A, 'underlying offense' means the offense the defendant *is convicted* of having materially supported after its commission (i.e., in connection with the concealment of or an escape from that offense), or in the case of a violation of 18 U.S.C. § 2339C(c)(2)(A), 'underlying offense' means the violation of 18 U.S.C. § 2339B with respect to which the material support or resources were concealed or disguised.  Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant; see Application Note 9 of the Commentary to § 1B1.3 (Relevant Conduct)."

USSG § 2X3.1 cmt. (Application Note: 1. Definition) (emphasis added).

> In fact, proof of the underlying offense is immaterial, since the point of the cross-reference is to punish more severely obstruction of prosecutions with respect to more serious crimes.
>
> . . . Kimble's claim that he was not actually an accessory after the fact to the homicide at issue here is not relevant, as it does not matter whether the defendant is actually guilty of the crime referenced in § 2X3.1 in order for the higher sentence recommendation to be imposed.

*Kimble*, 305 F.3d at 485-86 (relying on *United States v. Arias*, 253 F.3d 453, 459 (9th Cir. 2001), and citing *Shabazz*, 263 F.3d at 608) (quotation marks, editorial marks, and citations omitted).

In *Arias*, 253 F.3d at 459, the Ninth Circuit considered "whether the underlying offense whose prosecution is obstructed must be proved by a preponderance of the evidence (or any other measure) before applying § 2J1.2(c)(1)," and rejected such a requirement, explaining that:

> [P]roof of the underlying offense is not material, because the point of the cross reference is to punish more severely (and to provide a greater disincentive for) perjury in, and obstruction of, prosecutions with respect to more serious crimes.
>
> Other circuits have addressed the issue directly, and agree that the cross reference in § 2J1.2(c)(1) must be applied without regard to the defendant's guilt on the underlying offenses. *See, e.g., United States v. McQueen*, 86 F.3d 180 (11th Cir. 1996); *United States v. Dickerson*, 114 F.3d 464 (4th Cir. 1997); *United States v. Russell*, 234 F.3d 404 (8th Cir. 2000).
>
> No court of which we are aware[5] would permit inquiry into the sufficiency of the evidence on the underlying offense whose prosecution was obstructed.

*Id.* (footnote, quotation marks, and certain citations omitted; paragraph break inserted).

Looking to *Shabazz*, 263 F.3d at 610-11, we concede that the cited language supports Greer's claim that that the § 2X3.1 cross reference applies only to underlying offenses for which the State has obtained a conviction or which have been established as relevant conduct. But the facts in *Shabazz* differ materially from the facts before us here, and further assessment of the *Shabazz* opinion is necessary to put this language, and premise, in proper context for our purposes, which also leads to the likelihood that, even in *Shabazz*, that language might be dicta.

---

[5]*Arias* predated *Shabazz* by a little over two months.

Khalid Shabazz had not been involved in the underlying crime in any way—he was merely an opportunist who approached a criminal defendant in the midst of trial, offering to sell him a favorable vote from a corrupt juror. *Id.* at 604. The underlying crime was part of a large organized-crime prosecution in which the defendant, Paul Corrado, was charged with conspiracy to commit murder, among other things. *Id.* After Shabazz was caught and pled to obstructing justice, the court applied USSG §§ 2J1.2 and 2X3.1 at sentencing. *Id.* at 605. But in setting Shabazz's offense level based on the underlying offense, the court used Corrado's adjusted *total* offense level rather than his *base* offense level, meaning that it calculated Shabazz's offense level based on factors peculiar to Corrado, of which Shabazz was unaware and which were wholly unrelated to Shabazz's criminal act of obstruction. As we framed it:

> This appeal raises a question of first impression in the interpretation and application of U.S.S.G. § 2X3.1: whether the base offense level determined under that guideline by reference to the underlying offense obstructed begins with the total offense level or the base offense level of that underlying offense.
>
> Put in the context of this case, the issue is whether the district court erred by calculating Shabazz's offense level based simply on Paul Corrado's total offense level, which included adjustments for multiple counts, role in the offense, and specific offense characteristics.

*Id.* at 608 (paragraph break inserted). We held, simply and succinctly, that the Guidelines direct "the sentencing court to apply the *base offense level* of the underlying offense obstructed plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." *Id.* (quoting USSG § 2X3.1, comment. n.1) (editorial and quotation marks omitted). We remanded because "the district court erred by simply adopting Corrado's *total* offense level of 33 as a component of Shabazz's base offense level." *Id.*

All that is to say that *Shabazz* stands for the rule that, in applying USSG § 2X3.1, the sentencing court must use the underlying offense's *base* offense level not *total* offense level. In deciding *Shabazz*, we were not asked nor did we consider whether Shabazz's level could be enhanced based on Corrado's crimes that were investigated but uncharged or acquitted—the question was whether Shabazz's offense level could be enhanced based on Corrado's PSR-based "adjustments for multiple counts, role in the offense, and specific offense characteristics," *id.* at 608. While we certainly opined that § 2X3.1 uses "the offense level of the underlying crime of

*conviction*, not all offenses for which a principal stood trial," *id*. at 610, that was not a question that was fully or properly before us, leaving it without force or effect in the present case.

Consequently, *Shabazz* must be limited to its core holding that the sentencing court applying USSG § 2X3.1 must use the underlying offense's *base* offense level (along with the applicable specific offense characteristics that the State can show were known or reasonably should have been known to the obstructing defendant), not the *total* offense level. We therefore decline to apply the cited *Shabazz* language to the present case or circumstances.

We return now to Greer's argument that, by its plain language, the Guidelines Commentary prohibits application of the cross reference because the State did not establish that he "[wa]s convicted," USSG § 2X3.1 cmt., or even that a crime "was committed," USSG § 2J1.2 cmt. The Guideline's Commentary is neither purely advisory (non-binding) nor "binding in all instances." *Stinson v. United States*, 508 U.S. 36, 43 (1993). Instead:

> [T]he guidelines are the equivalent of legislative rules adopted by federal agencies . . . [and the] commentary is akin to an agency's interpretation of its own legislative rules. . . . [P]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.

*Id*. at 45 (quotation marks and citations omitted); *see also Beckles v. United States*, 580 U.S. --, 137 S. Ct. 886, 897 (2017) (Ginsburg, J., concurring) (explaining that the commentary is "authoritative," pursuant to *Stinson*). Thus, for purposes of this analysis, if Greer's proffered interpretation was truly the Commission's intended interpretation, the question is whether such interpretation is plainly erroneous or inconsistent with the Guidelines themselves.

We find it unlikely that the Guidelines intended that a defendant should avoid or minimize punishment for obstruction of a criminal investigation just because that obstruction was so successful that he prevented a conviction on the underlying crime, or because the obstruction was of an investigation for which, as it might turn out, there actually was no underlying crime. More likely, the Guidelines intended that the obstruction of a criminal *investigation* is punishable even if the prosecution is ultimately unsuccessful or even if the investigation ultimately reveals no underlying crime. Moreover, as we said in *Kimble*, 305 F.3d at 485-86, obstruction of the investigation of a more serious crime is correspondingly more

serious than that of an investigation into a less serious crime and warrants more punishment. For example, obstructing a murder investigation is more serious than obstructing a trespassing investigation and warrants more severe punishment to discourage such obstruction, regardless of whether either investigation results in prosecution or conviction. Someone who obstructs a murder investigation risks severe punishment, even if he knows the suspect is innocent, because a murder investigation itself is a very serious thing and its obstruction cannot be tolerated.

This is to say that we find the proposed interpretation plainly erroneous and inconsistent with the Guidelines. In so concluding we also note that every other Circuit to consider this has also held that the State need not prove that the defendant committed the underlying crime, thus likewise rejecting such an interpretation. *See United States v. Olsen*, 519 F.3d 1096, 1105-06 (10th Cir. 2008); *Arias*, 253 F.3d at 461 (9th Cir.); *Russell*, 234 F.3d at 409-10 (8th Cir.); *United States v. Suleiman*, 208 F.3d 32, 38 (2d Cir. 2000); *Dickerson*, 114 F.3d at 468 (4th Cir.); *United States v. Martinez*, 106 F.3d 620, 622 (5th Cir. 1997); *McQueen*, 86 F.3d at 182-83 (11th Cir.).

We find no error in the district court's application of USSG § 2X3.1 in calculating Greer's advisory guidelines for purposes of setting his sentence.

**B.**

Ordinarily, we review the reasonableness of the sentence for an abuse of discretion and findings of fact for clear error. *Schock*, 862 F. 3d at 566-67. If, however, a defendant fails to raise the claim at sentencing, then our review is for plain error. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008). Greer argues that his sentence was substantively unreasonable because the district court improperly relied on unproven factual allegations concerning the female driver and placed too much weight on the deterrence factor.

Greer argues that the district court improperly relied on unfounded allegations, namely three facts that he claims were not proven by a preponderance of the evidence: (1) that the sex was an assault, (2) that the woman was intoxicated or smelled of alcohol, and (3) that Greer knew she had an outstanding arrest warrant. Because Greer did not raise these at sentencing, we would review for plain error, but this argument is so entirely unfounded that he cannot show any

possible error.[6]  The sentencing transcript establishes that the district court sentenced Greer for his "[l]ying in an official investigation," R. 53 at 43 (transcript), not because the sex was rape, or because the woman was intoxicated, or because she had an outstanding warrant.

Greer also argues that the district court failed to consider the § 3553 factors properly, in that it placed too much weight on the general deterrence factor—emphasizing that Greer was a police officer and it wanted to deter other police officers—and failed to appreciate (or accept) Greer's argument that the length of a sentence does not act as a deterrent.  In this latter argument, Greer and his attorney argue, counterintuitively, that a shorter sentence would be a more effective deterrent than a longer sentence.  *See* Apt. Br. at 30 ("Thus, the district court's goal of general deterrence of other police officers would be met by a much shorter sentence.").  Greer also argues that because, given this prosecution, he would not be hired as a police officer again anyway, deterrence should not be a consideration in his sentencing at all.

But, as the State points out, the court did consider the other § 3553 factors and, in fact, that was why it departed below the advisory range (10 months below) in setting the actual sentence.  Moreover, Greer's main legal contention is wrong—a court may emphasize a particular factor.  *See United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012) ("a district court does not commit reversible error simply by attaching great weight to a single factor" (marks omitted)).  And the goal of deterrence extends well beyond Greer himself.  All told, Greer cannot overcome the presumption that the sentence is reasonable.

## C.

Finally, Greer argues that he was entitled to a downward departure for "aberrant behavior" (§ 5K2.20) or "victim misconduct" (§ 5K2.10).  He claims the court improperly considered "aberrant behavior" in light of *all* police officers, when it should have considered only him.  He does not elaborate on his "victim misconduct" claim beyond mere assertion.

But "[t]he law in this circuit is clear that we have no jurisdiction to review a decision of a district court not to depart downward[,] unless the record shows that the district court was

---

[6]Regardless, these facts were set out in the PSR and Greer did not object to them there, so the district court would have been entitled to rely on them on that basis.  Fed R. Crim. P. 32(i)(3)(A).

unaware of, or did not understand, its discretion to make such a departure." *United States v. Bazazpour*, 690 F.3d 796, 804 (6th Cir. 2012) (quotation marks omitted). There is no indication in the record here that the district court felt constrained in the exercise of its discretion.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.